Earl TABOR and Mabel
Tabor, Appellants,

v.

Louise HOGAN, Appellee.

No. 07–97–0043–CV.

Court of Appeals of Texas,
Amarillo.

Nov. 5, 1997.

Rehearing Overruled Dec. 15, 1997.

Waters, Holt & Fields, (Kenneth W. Fields), Pampa, for appellant.

Law Offices of Ty M. Sparks, (Ty M. Sparks), Canadian, for appellee.

Before DODSON, QUINN and REAVIS, JJ.

QUINN, Justice.

Earl and Mabel Tabor (the Tabors) appeal from a judgment in favor of Louise Hogan (Hogan) declaring that a public road exists through their property. The judgment is attacked via twelve points of error which may be placed in two general groups. That is, points one through ten concern the sufficiency of the evidence underlying the court's finding that the way in question was public. The second category, comprised of points eleven and twelve, essentially question the court's authority to delegate its power to determine the location of that way. We affirm in part and reverse in part.

### Facts

The evidence presented at trial, though mixed and contradictory at times, indicated the following. The dispute in question arose over a dirt path located on realty owned by the Tabors. Over the years, the path became known as the "loop road" by local residents. And, the public first began to travel down it more than half a century ago. Though not in constant use throughout the ensuing years, witnesses did recall that many would utilize it during the community's two annual festivals while others traversed it throughout the year. Moreover, Hogan's tenant would often drive his tractor trailer on it to reach his home while the mailman used it, at one time, as part of his delivery route. So too did the record contain evidence illustrating that 1) the county occasionally maintained the way, 2) no previous owner objected to its use, and 3) the populace of the community believed it to be open to the general public given its historical use. But, in 1990, several years after the Tabors acquired the land, they fenced-off the road's entrance and plowed-up its surface. This not only stopped the public from journeying upon it but also spawned the present suit and appeal.

When the cause came for trial and after the parties presented their evidence, the court found that the loop was indeed "part of a public road connecting Court Street and

Husselby Street" in the town of Mobeetie, Texas. It also concluded that 1) the road began

> on Court Street in the platted portion of Block B of Patton's Addition and initially turns in a southeasterly direction and curves through the middle of the south half of Block B coming out of said south half of Block B entering Husselby Street in a northeasterly direction

and 2) the Tabors "obstructed and attempted to close" it. Yet, nothing was said of its metes and bounds or legal description. Instead, the task of resolving that matter was left to the "Wheeler County public road official having jurisdiction over roads ... in ... Wheeler County."

### Points of Error One Through Ten

In points one through ten, the Tabors argued that the evidence did not support the trial court's findings. Facially, they seemed to be critiquing the evidence concerning 1) the public character of the road, 2) its location, and 3) their interference with its use, but the discussion which follows their general points is restricted to the topic of the road's public character. That is, they did little other than illustrate how Hogan purportedly failed to prove that the way became public through the doctrines of implied dedication or adverse possession (easement by prescription). Thus, our review is similarly restricted to the issue of whether Hogan established that the road became public via said theories of law.

#### a. Standard of Review

In contesting the sufficiency of the evidence, the Tabors did not disclose whether they believed same was legally or factually insufficient. The two are distinct concepts which implicate distinct standards of review. Nevertheless, in the interest of justice, we will test the quantum of evidence presented under both.

 A finding is legally sufficient if some evidence of probative force, or reasonable inferences therefrom, supports it. *In re Striegler*, 915 S.W.2d 629, 638 (Tex.App.—Amarillo 1996, writ denied). This is deter-

mined by examining the record for evidence which favors the determination while ignoring that which contradicts it. *Id.* However, in resolving questions of factual sufficiency, we do not look just for favorable evidence. Rather, our job is to determine whether the evidence uncovered through application of the legal sufficiency test is too weak, or the contrary evidence too overwhelming, to support the finding. *Id.* at 638–39. That, in turn obligates us to consider the entire record, not just the evidence which favors the finding. *Id.* Yet, this does not permit us to substitute our personal interpretation of the evidence for that of the fact finder below. We must still defer to the fact finder's authority to assign weight to the evidence and resolve credibility issues.

### b. Implied Dedication

The common law recognizes that private land may be dedicated to public use.[1] *Jezek v. City of Midland,* 605 S.W.2d 544, 548 (Tex.1980). The dedication may be either expressed or implied. *Id.* But, in either situation, the intent of the landowner is pivotal. That is, he must perform some clear, unequivocal act or make some declaration evincing an intention to set the property aside for use by the public. *O'Connor v. Gragg,* 161 Tex. 273, 339 S.W.2d 878, 882–83 (1960); *Dunn v. Deussen,* 268 S.W.2d 266, 269 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.); *see O'Connor v. Gragg,* 339 S.W.2d at 882 (indicating that the simple "act of throwing open the property to the public use, without any other formality, is sufficient to establish ... dedication"). If the owner has done so, and the public has relied upon that conduct and used the way, then the land at issue has been dedicated. *Id.; see Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984) (discussing

the elements of implied dedication). Moreover, the span of time in which the property was traversed by the public is informative but not controlling, so long as the requisite intent exists.[2] *Dunn v. Deussen,* 268 S.W.2d at 269. Additionally, if no one knows when the public use actually began or who owned the land at the time and if no evidence exists to show the intention of the owner, then it is presumed that the land was publicly dedicated. *O'Connor v. Gragg,* 339 S.W.2d at 882; *Dunn v. Deussen,* 268 S.W.2d at 269.

### c. Application of Standard and Law to the Record

■ Here, the evidence showed that the public had used the loop without objection from those who owned the realty long before the Tabors purportedly acquired title to it. Though no one knew exactly when the use began, few denied that it had been ongoing for at least fifty years. This, coupled with the evidence regarding use by the postal service, maintenance by the county, and general belief that the road was public constituted evidence of intent to dedicate as well as acceptance and reliance by the public. *See Jezek v. City of Midland,* 605 S.W.2d at 549 (stating that "[i]t is evidence of a landowner's intention to dedicate if he permits the public to use his land as a highway").[3] In other words, probative evidence supported the trial court's determination that the road was indeed public, and that determination was not overwhelmed by contradictory evidence. So, the finding enjoys factually sufficient support, and we overrule points one through ten.

### Points Eleven and Twelve

The final two points concerned the trial court's decision to allow the "public road

1. It is worthy of note that the state legislature vitiated the common law theory of dedication in 1981. In its place, it substituted art. 6812h, § 1, *et. seq.,* of the Revised Civil Statutes. However, the statute lacked retroactive effect. *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984). So, since many of the indicia relied upon at bar evince that dedication had occurred long before 1981, neither art. 6812h nor its successor, § 281.001, *et. seq.,* of the Texas Transportation Code affect our conclusion.

2. This circumstance distinguishes the doctrine of dedication from that of prescription. Under the latter, the property must be used for at least ten years by those adversely claiming the right to travel same. *Wiegand v. Riojas,* 547 S.W.2d 287, 289 (Tex.Civ.App.—Austin 1977, no writ).

3. Because the evidence supported the court's finding of dedication, we need not address the topic of prescriptive easement.

official having jurisdiction over the public roads in ... Wheeler County" to decide the location of the way in question. According to the Tabors, the court's declaration to that effect constituted an impermissible delegation of judicial power. We agree and sustain the point.

■ According to the Texas Constitution, the judicial power of the state is vested in the Texas Supreme Court, Court of Criminal Appeals, Courts of Appeal, District Courts, County Courts, Commissioners Courts, Justice Courts, and in "such other courts as may be provided by law." TEX. CONST. art. 5, § 1 (Vernon 1993). Furthermore, the concept of judicial power, as it pertains to a district or other trial court, encompasses the authority to hear facts, decide issues of fact, decide questions of law, enter judgment in accordance with the facts and law, and enforce those judgments once entered. *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641, 645 (1933); *Crum v. Randall,* 198 S.W.2d 936, 939 (Tex.Civ.App.—Dallas 1946, no writ). More importantly, those enumerated powers are non-delegable. *Id.* Simply put, the trial judge may not relinquish them to others.

■ Here, implicit in declaring that a public road lay within the Tabors' property, was the obligation to declare the factual location of that road. Yet, the trial court assigned that task to the "public road official" of Wheeler County who was to invoke his own "judgment" to determine the road's legal location.[4] Moreover, nothing in the decree indicated that his judgment would be anything other than final. Under these circumstances, we must conclude that the court's directive was tantamount to an impermissible delegation of judicial power. The location of the road could only be finally determined by the trial court once its jurisdiction over the controversy attached. *Morrow v. Corbin, supra; Crum v. Randall, supra.* The unknown county road official could not be invested with such power by the trial court.

■ The Tabors' contention that no unlawful delegation occurred since the district judge retained supervisory control over the commissioners court is misplaced for two reasons. First, the delegation was not to the commissioners court but to some unknown official in charge of the county roads. Second, while article 5, § 8 of the State Constitution and § 24.020 of the Texas Government Code may vest district courts with appellate jurisdiction and general supervisory control over commissioners courts, neither empower the former to dictate the actions of the latter. Instead, the power contemplated is little more than the authority to judicially review improper acts presented via a suit, mandamus, or like proceeding. *See Rodriguez v. Vera,* 249 S.W.2d 689, 691–92 (Tex.Civ. App.—San Antonio 1952, no writ) (interpreting the provisions to mean that the trial court may review decisions of a commissioners court which fall outside of the latter's jurisdiction or amount to an abuse of discretion). Neither proviso, however, allows a district court to sit as the head of the commissioners court and thereby direct its actions. Nor do either allow the district court to delegate its judicial duties to the commissioners court.

Accordingly, the portion of the final judgment which directs the public official responsible for roads in Wheeler County to locate, restore, and maintain the public road in question is reversed, and the question of determining the location of the public road is remanded for further proceedings. In all other things, the judgment is affirmed.

---

4. Neither Wheeler County nor the "official" responsible for public road maintenance was made party to the suit. Thus, it is questionable whether the court had jurisdiction to order either to do anything *vis-a-vis* the controversy instigated between the Tabors and Hogan.