**In the Interest of T.M., A Child.**

No. 07–00–0283–CV.

Court of Appeals of Texas, Amarillo.

Oct. 18, 2000.

---

Cynthia Brown, Dept. of Protective and Regulatory Services, Lubbock, for appellant.

Leon Mitchell, Gurley, Mitchell & Gassaway, L.L.P., Borger, for appellee Josie Gonzales.

Jami K. Watson, Amarillo, Amicus Curiae on behalf of Intervenors/Foster Parents.

Curtis Hinshaw, Borger, for appellee John Gonzales.

Before BOYD, C.J., and QUINN and JOHNSON, JJ.

BRIAN QUINN, Justice.

The Texas Department of Protective and Regulatory Services (DPRS) appeals from a final judgment. Among other things, the latter appointed Josie Gonzales as sole managing conservator and Kathy Williamson Sprague and John Gonzales as possessory conservators of T.M., a child. Through five points of error, DPRS contends that 1) it was denied its constitutional right to a jury trial, 2) the trial court erred in dismissing its first suit with prejudice and "by denying all relief requested," 3) the trial court erred in dismissing its first suit as a "remedy for an alleged breach of a Rule 11 agreement," 4) the trial court erred in "limiting the admissibility and scope of expert testimony and . . . imposing 'death penalty discovery sanctions' to exclude testimony," and 5) the evidence was legally and factually sufficient to support "termination of parental rights or the appointment of the Department as managing conservator." We affirm.

### Background

The DPRS initiated suit on July 21, 1998 seeking the appointment as temporary and permanent managing conservator of T.M, a seven month old female child. Named as parents of T.M. were Kathy Sprague and John Gonzales. On the same day, the trial court appointed the DPRS as temporary managing conservator. So too did it 1) authorize the department to take possession of the child and 2) note that possession of same had already been taken by the DPRS.

The action remained pending for some 18 months when the litigants executed a Rule 11 agreement in apparent effort to avoid the effect of section 263.401 of the Texas Family Code.[1] That statute reads as follows:

(a) Unless the court has rendered a final order or granted an extension under subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court *shall dismiss* the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.

(b) On or before the time described by Subsection (a) for the dismissal of the suit, the court may extend the court's jurisdiction of the suit for a period stated in the extension order, but not longer than 180 days after the time described by Subsection (a), if the court has continuing jurisdiction of the suit and the appointment of the department as temporary managing conservator is in the best interest of the child. . . .

(c) If the court grants an extension, the court shall render a final order or dismiss the suit on or before the date specified in the extension order and

---

1. Rule 11 of the Texas Rules of Civil Procedure states that "no agreement between the attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record."

*may not grant an additional extension.*

TEX.FAM.CODE ANN. § 263.401 (Vernon's Supp.2000) (emphasis added). Prior to the first anniversary of the suit, that is, July 26, 1999, the trial court at bar entered an order granting a 180–day extension contemplated by section 263.401(b). Therein, the new dismissal date was designated December 15, 1999. Though not clearly reflected in the record, the cause was apparently assigned a preferential trial setting of December 6, 1999. That setting was then vacated and trial was "reset" for January 10, 2000. In so rescheduling the trial, the court implicitly modified its prior order designating the dismissal date of December 15, 1999.[2]

The Rule 11 agreement referred to above was executed by all the litigants, including the DPRS, on December 14, 1999.[3] Therein, they agreed to postpone the January 2000 trial and extend the section 263.401 dismissal date to June 5, 2000. The trial court acceded to the wishes of the litigants and issued another order directing that the dispute be "heard on or before June 5, 2000." Moreover, by December 14th, the DPRS had amended its original petition seeking, among other things, termination of the parental rights of Kathy Sprague and John Gonzales. In turn, John Gonzales tendered a "counter petition" seeking to have himself declared father of the child and to have an appropriate conservator appointed. However, he was not alone in seeking relief from the court. His mother, Josie Gonzales, had intervened, praying to be designated conservator of her granddaughter.

Trial eventually began on May 30, 2000, with voir dire and opening statements.

Once a jury was selected, the DPRS began presenting its evidence on June 1st and rested four days later on June 5th. On the next day, John Gonzales moved to dismiss the petition of the DPRS in accordance with section 263.401 of the Family Code and the terms of the Rule 11 agreement. The motion was granted and the petition was dismissed, however, that did not result in termination of the cause. Instead, the court entertained the allegations and pleadings of the remaining parties. Those pleadings included the petition of T.M., filed by the ad litem, to terminate the parental rights of her mother, Kathy, and her father, John, the "counter petition" of John and the intervention of Josie. Moreover, the remaining litigants waived the jury (which the court subsequently released) and proceeded to try the cause to the court. All completed their respective presentation of evidence on June 6th.

After being dismissed, the DPRS filed a second petition involving T.M. and her parents. Although assigned a different docket number (No. 4404), the pleading, according to the state agency, averred the "same grounds" as the live pleading which the court had previously dismissed. In response to the DPRS filing, the trial court executed an order which included the following: 1) a finding that "all issues of fact and matters of law involving ... [cause No. 4404] are now properly before this Court in Cause Number 4301" and "all matters set forth in the [second] petition have been heard and considered ... in Cause Number 4301", 2) a consolidation of No. 4404 with 4301, and 3) a denial of "all relief requested" by the DPRS in 4404. Thereafter, judgment was entered granting Josie sole managing conservatorship of

---

2. Whether the trial court had the authority to do so goes uncontested. However, we do note that 180 days from July 26, 1999 (the first Monday following the first anniversary of the suit) fell on January 22, 2000. So, the new setting was within the period authorized by section 263.401(b) of the Texas Family Code.

3. Question was raised by the court and at least one litigant about that portion of the Rule 11 agreement purporting to extend the dismissal date. Indeed, the court likened the date to a "drop dead date". Nevertheless, the DPRS informed the court that the date "could be extended even past the extension date" as long as "the parties execute a Rule 11 Agreement."

T.M. and, rather than terminating their parental rights, the court appointed Kathy Sprague and John Gonzales possessory conservators.

### Points of Error One, Two and Three

We address the DPRS's first three points together since they apparently concern the trial court's decision to dismiss the agency on June 6th. And, upon doing so, we also overrule them.

■ Underlying each is the meaning and effect of section 263.401 of the Family Code. Simply put, the DPRS suggests that the provision does not mean what it, says and that its provisions are merely suggestive as opposed to mandatory. To determine whether it is correct requires us to decide whether a court, with or without the assistance of the litigants, can avoid the deadlines mandated by the statute. And, upon doing so, we immediately note an historic concept predating the enactment of section 263.401 and describing a portion of this State's philosophy towards children. That concept directs that children need permanence and stability in their lives. For instance, our brethren have long recognized that justice demands a speedy resolution of child custody and support issues. *In re Bishop,* 8 S.W.3d 412, 416 (Tex.App.—Waco 1999, no pet.), *quoting, Proffer v. Yates,* 734 S.W.2d 671 (Tex.1987). This sentiment was later incorporated into the report of the Governor's Committee to Promote Adoption. *Id.* The latter recommended that upon the DPRS obtaining conservatorship over a child, parental rights must be terminated or the family reunified within twelve months. *In re Bishop,* 8 S.W.3d at 416–17. That the legislature sought to implement this recommendation when enacting section 263.401 is clear. *Id.* at 416, *citing* HOUSE COMM. ON JUVENILE JUSTICE & FAMILY ISSUES, BILL ANALYSIS, Tex.S.B. 181, 75th Leg., R.S. (1997). Through the provision, it wanted to enact "a scheme ... to ensure that children would remain under the *temporary care* of DPRS for no longer than one year, with [an] extension not to exceed 180 days...."[4] *In re Neal,* 4 S.W.3d 443, 447 (Tex.App.—Houston [1st Dist.] 1999, no pet.) (emphasis added).

Next, with the foregoing sentiment and intent in mind, the legislature enacted a statute declaring that the trial court "*shall* dismiss" the suit "[u]nless" it has entered a final order or granted an extension by the first Monday after the first anniversary of the date on which the DPRS was appointed temporary managing conservator. *See* TEX.FAM.CODE § 263.401 (emphasis added). Although an extension may be granted, the number was expressly restricted to one, as exemplified by the phrase "may not grant an additional extension" found at section 263.401(c).

■ Thus, before us is legislative history disclosing an intent to restrict the time within which the DPRS had to act, by using the word "shall" in reference to dismissal and by passing a directive limiting extensions to one. Given this, we cannot but construe the term "shall" to be anything other than mandatory. *See DeLeon v. Periman,* 530 S.W.2d 174, 176 (Tex.Civ. App.—Amarillo 1975, no writ) (holding that the word "shall", when appearing in a statute, is used in the mandatory sense particularly in providing for the essence of the thing to be done unless the context of the entire act evinces an intent that it be merely directory). So, we, like our brethren in *Bishop* and *Neal,* also hold that the court has no choice in the matter of whether or not to dismiss. *See In re Bishop, supra; In re Neal, supra.* Once the time lapses and no further extensions are available, dismissal is required irrespective of what the litigants may desire and the ma-

---

**4.** We note, as did the *Neal* court, that the deadlines imposed by section 263.401 may be avoided via an order directing, among other things, the DPRS to relinquish actual physical custody of the child to a parent. TEX.FAM.CODE ANN. § 263.402(a) (Vernon's Supp.2000). This avenue was not pursued at bar, and, therefore, is irrelevant to our situation.

chinations in which they may engage.[5] *Accord, In re Bishop,* 8 S.W.3d at 419 (holding that the court "has no discretion in the matter"); *In re Neal,* 4 S.W.3d at 447 (holding the same). With this said, we now address the first three issues of the DPRS.

Again, through each of the first three issues, the DPRS decries the trial court's decision to dismiss the proceeding mid-trial. This purportedly constituted error because it 1) denied the entity of its supposed right to a jury trial, 2) "mismanaged the case", and 3) imposed an undue sanction for an alleged breach of the Rule 11 agreement. To each argument, we refer the DPRS to the wording of section 263.401 as construed above. In short, the statute mandated the dismissal of the proceeding when the 180 day extension expired in January of 2000. The trial court had neither the discretion nor authority to do otherwise. *In re Ruiz,* 16 S.W.3d 921, 927 (Tex.App.—Waco 2000, no pet. h.); *In re Bishop,* 8 S.W.3d at 419; *In re Neal,* 4 S.W.3d at 447.

 Nor could the litigants negate this legislative mandate through a Rule 11 agreement. While people are generally free to contract, contracts which violate public policy as captured in statutory mandate are unenforceable. *Williams v. Patton,* 821 S.W.2d 141, 147–48 (Tex.1991). Furthermore, a Rule 11 agreement is nothing more than a contract that satisfies the terms of Rule 11 of the Texas Rules of Civil Procedure. As such, it too is regulated by laws pertaining to contracts in general and is therefore unenforceable if it violates public policy. And, given the clear public policy encompassed within the time restrictions of section 263.401(a) and the fact that the parties through the Rule 11

agreement at bar attempted to bypass those restrictions, we conclude the agreement was unenforceable.[6]

Simply put, the DPRS received much more than that to which it was lawfully entitled. That undue gain appeared in the form of impermissible delay wrought by its own actions and the postponement of trial to a date outside that allotted by statute. To adopt the contentions of the DPRS and now say that the court erred in dismissing the suit months after it was required to do so would be nothing short of compounding the violation of legislative dictate. This we cannot do. The department was not entitled to more time, therefore, we must reject points one, two and three.

 Finally, and to the extent that the DPRS opines that the trial court erred in denying it the emergency relief sought via the suit filed in June of 2000, we note the following. The DPRS believed it was entitled to such relief because it was founded upon "new and additional reasons for emergency orders discovered *during trial.*" (Emphasis added). Admittedly, authority holds that a dismissal under section 263.401 does not constitute an adjudication on the merits. *In re Ruiz,* 16 S.W.3d at 927. So too does it conclude that the DPRS may refile the case and assert the same grounds for *termination* as originally alleged. *Id.* However, the right to rely upon the same grounds for termination does not permit the entity to use the same facts as the basis for removing the child from her parents·or maintaining her in a foster home pending resolution of the suit. *Id.* New facts justifying the temporary relief must be propounded. *Id.* Moreover, in denying the DPRS temporary emergency relief sought via the second action at bar, the trial court found

---

**5.** The suit contemplated in section 263.401 could be likened to one involving a statutory cause of action in favor of the DPRS. In creating it, the legislature had the authority to determine its parameters. *See Texas Workers' Compensation Com'n. v. Garcia,* 893 S.W.2d 504, 528 (Tex.1995). So too could it dictate the effect of exceeding or failing to abide by

those parameters, such as mandating the loss and dismissal of the cause due to the passage of time.

**6.** Even the DPRS acknowledged in its brief that the Rule 11 agreement was "void, as it [was] contrary to public policy."

that "all issues of fact and matters of law involving both this cause and [the original cause were] . . . properly before this Court in" the original cause. So too did it find that "all matters set forth in the Petition for Emergency Protection ha[d] been heard and considered by the Court in" the original proceeding. In other words, the court found that the purportedly new facts relied upon by the DPRS to obtain emergency relief were not, in fact, new, but part of the first action. Given this and the fact that the DPRS failed to attack either of the aforementioned findings, we cannot fault the trial court for denying the emergency relief sought by the department in its second effort to remove T.M.

### Point of Error Four

■ In its fourth point, the DPRS engages in a somewhat confusing dialogue regarding "death penalty discovery sanctions" supposedly levied against it *viz-a-viz* the testimony of Dr. Basham.[7] Yet, we find no order or decision of record levying such "sanctions." Nor has the DPRS referred us to that portion of the record wherein these supposed "sanctions" could be denied. Thus, without such "sanctions" being levied, we cannot hold that the trial court erred in levying them.

■ The trial court did prohibit Basham from testifying about his evaluation of T.M.'s foster parents as potential adoptive parents.[8] To the extent that DPRS attempts to complain about that through this particular point of error, we say the following. Several reasons were offered (by those opposing admission of the testimony) as to why the testimony should be excluded. They included not only the proposition that it was irrelevant since the proceeding was not one involving adoption, but also because the information concerning the testimony was not delivered to them in a timely manner. Which ground the court relied upon is unknown since it mentioned neither in its ruling. Thus, logic and the standard of review compelled the DPRS to, at the very least, illustrate on appeal why neither were legitimate. That is, the applicable standard of review is one of abused discretion. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). And, in determining whether the trial court abused its discretion the reviewing court is required to affirm the decision on any conceivable ground, even if it was not one mentioned below. *Worford v. Stamper*, 801 S.W.2d 108 (Tex.1990). Therefore, before we can hold that a trial court erred *viz* an evidentiary ruling, it is incumbent upon the party having the burden to prove error on appeal *(i.e.,* the appellant) to negate each potential basis supporting the ruling. Here, the DPRS addressed neither of the grounds proffered by the opponents. Furthermore, it is not our obligation to act as its advocate and raise argument that it neglected to raise. So, we must conclude that it failed to carry its burden on appeal.

### Point of Error Five

In its fifth and final point, the DPRS attacks the legal and factual sufficiency of the evidence underlying the court's decisions. The decisions in question are those 1) refusing to terminate the parental rights of T.M.'s parents (Kathy Sprague

---

7. An example of this commentary appears at page 38 of the brief, which we now quote: Cross-examined [sic] of Dr. Basham concerning his evaluation on [sic] the father (with no mention of a recommendation for the termination of parental rights), the opinion in his written evaluation on Intervenor that T.M. could be raised in far worst [sic] homes than Josie Gonzales, and his determination for the instant child custody case, opened the door to questioning by the AAL on cross-examination or by the Department on redirect to properly go into the subject of his recommendation for termination of parental rights and for adoption by the Balls, who would best parent this little girl.

8. While the court did not allow Basham to opine about the qualities of T.M.'s foster parents, it did permit him to testify on a plethora of other subjects. So, the DPRS was not denied opportunity to present their expert.

and John Gonzales) and 2) granting Josie Gonzales managing conservatorship over the child. We overrule this point as well for several reasons.

 First, the department does not claim that the rulings lack evidentiary support. Instead, it suggests that the "[e]vidence was legally and factually sufficient *to support termination, or in the alternative, the appointment of the Department as managing conservator.*" (Emphasis added). In other words, the court allegedly erred in holding as it did because evidence supposedly existed which would have authorized it to hold for the DPRS. Such an argument, however, fails to comport with the applicable standard of review. Indeed, the latter requires one urging legal insufficiency to prove that no evidence supported the decision rendered. *Tabor v. Hogan*, 955 S.W.2d 894, 895–96 (Tex.App.—Amarillo 1997, no pet.). And, whether the record contained evidence contrary to the decision is irrelevant until that first obstacle is cleared. *Id.* Similarly, one claiming factual insufficiency must explain why the evidence which does support the ruling is deficient when compared to the other evidence of record. *Id.* The DPRS does neither. It simply discusses the evidence which would have allegedly supported a verdict in its favor. In doing nothing other than that, it failed to carry its burden on appeal.

Second, despite the erroneous tactic of the department, we nevertheless perused the record to determine whether the holding in question enjoyed legally and factually sufficient evidentiary support. Upon doing so, we found a record replete with contradictory evidence, yet, some of that evidence supports the trial court's ruling. And, while that which does not is as plentiful, we cannot say that it renders the court's action manifestly wrong or clearly unjust.

 In sum, whether we would have made the same decision had we been the trier of fact matters not. It is the trier of fact, not this court, that has the authority to resolve conflicts in evidence and weigh the credibility of the witnesses. And, as long as its ultimate decision enjoys evidentiary support, we must trust and defer to it. Therefore, given the standard of review and the state of the appellate record, we conclude that the evidence is legally and factually sufficient to support the trial court's decision to forego the termination of parental rights and to grant managing conservatorship to Josie Gonzales.

Having rejected each point or issue raised by the DPRS, we affirm the judgment entered below.