No. 84,653

In the Matter of the Condemnation of Land For State Highway Purposes, E. DEAN CARLSON, Secretary of Transportation of the State of Kansas, *Appellee*, v. MICHAEL L. BURKHART and KENT A. STEHLIK, *Appellants*.

(27 P.3d 27)

Opinion filed July 13, 2001.

*Phillip S. Mellor*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Stephen E. Robison* and *Lyndon W. Vix*, of the same firm, were with him on the briefs for appellants.

*Bradley A. Stout*, of Triplett, Woolf & Garretson, LLC, of Wichita, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

ABBOTT, J.: The appellants, Michael L. Burkhart and Kent A. Stehlik, appeal the district court's order that the county had acquired a portion of their land in Ford County, Kansas, by way of implied dedication.

For simplicity, the appellants will be referred to as landowners and the appellee, E. Dean Carlson, Secretary of Transportation of the State of Kansas, will be referred to as KDOT.

This case arises in connection with events leading up to the construction by KDOT of the South By-Pass project in Ford County, Kansas. The South By-Pass project consisted of the construction of a new two-lane limited access highway around the southeast portion of Dodge City, Kansas. The new highway intersects with U.S. Highway 154 on the east side of Dodge City, extends south

across the Arkansas River, makes a broad curve to the west, and intersects with Highway 283 on the south side of Dodge City.

The landowners' property is approximately 20 acres and located in the southwest corner of the intersection of Highway 154 and the county road. The property is bordered by Highway 154 on the north and the county road on the east. The property abuts similar privately owned property on both the south and west. The present dispute concerns only a strip of land approximately 40 feet wide, the length of the east side of the landowners' property.

Prior to the landowners' purchase of the property, a neighbor to the south, Kenny Gladden, had located a sand plant and blacktop paving plant on his property. In order to get access to Highway 154, he built a roadway. Gladden platted his property, including a roadway 60 feet in width on both sides of the section line. Gladden then built a 40' wide roadway running along the section line from his sand plant north to Highway 154. Gladden subsequently built a low water crossing across the Arkansas River to allow persons who lived south of the river access to Highway 154. Gladden eventually requested the county commission to maintain the road which he had built. When the commission declined to do so, he closed it, preventing those south of the river from using it. The county commission subsequently agreed to maintain the road through the passage of Resolution No. 26 of 1990. Although the county commission did not adopt the road as a county road, it agreed to maintain the road all the way to Highway 154. Stehlik served as a county commissioner from 1988 to 1992 and signed Resolution No. 26 of 1990 as chairman of the county commissioners. Resolution No. 26 of 1990 recites that the South By-Pass road had been in existence since 1986 and, prior to that road, there had existed a county gravel road. The resolution recites that the road constructed "is a major traffic artery" and reaffirms that Ford County would maintain and repair the road.

A portion of the KDOT highway project was constructed in part on the road in question in this case. The new highway is wider than the county road. As a result, KDOT acquired additional property to complete the new highway project, including a portion of the landowners' property.

The landowners assert that prior to KDOT's condemnation action, the county road consisted in part of a 20' wide strip on the east side of their property. KDOT maintains that the existing county road was 60' wide on each side of the section line. Thus, the area in dispute is a 40' wide tract extending the entire length of the east side of the landowners' property. It is hereinafter referred to as the "40' tract." The district court agreed with KDOT and defined the county road to be 60 feet wide prior to the taking.

The dispute over the width of the county road has its origins in a right-of-way agreement dated November 7, 1983, between Harley and Anna Holladay, predecessors in interest to the landowners, and the Board of County Commissioners of Ford County. The right-of-way agreement widened the county road on each side of the section line from a 20' road to a 60' road with the conveyance of the 40' tract. The right-of-way agreement purported to make the conveyance of the 40' tract subject to the condition that

"construction of the By-Pass is to begin within five years of the date of the signing of this Agreement. If construction does not start within that period, this Agreement will become null and void and title shall be returned to Grantors."

Before expiration of the 5-year period of the right-of-way agreement, the Holladays sold the property to the landowners pursuant to a contract and escrow agreement entered into in January 1986. The contract and escrow agreement describe the property as extending to a point "Twenty (20) Feet West of the East Section Line of Section Thirty-one (31)." The contract and escrow agreement, therefore, ignores the contingent conveyance of the 40' tract to Ford County as set forth in the right-of-way agreement signed 3 years earlier.

Despite the fact that the contract and escrow agreement did not mention the 40' tract, the warranty deed from the Holladays to the landowners specifically mentions the 40' tract. The deed, dated July 30, 1988, was filed in the Ford County Register of Deeds office on July 18, 1991. The deed conveys the Holladays' reversionary interest in the 40' strip to the landowners.

In attempting to obtain the 40' tract from the landowners for the purposes of constructing the new highway, KDOT filed this

action, seeking condemnation of the property in question. The landowners filed an appeal in Ford County District Court contesting the amount awarded them by the court-appointed appraisers.

The landowners filed a separate inverse condemnation action alleging that KDOT illegally appropriated all of their remaining property during the construction of the new highway (hereinafter referred to as Case 95 C 119). In filing 95 C 119, the landowners described their property but did not include the 60' wide part of the county road as part of the description. Case 95 C 119 was subsequently consolidated with the present case.

Prior to trial, KDOT learned that the landowners were going to assert that they owned the 40' strip of land. KDOT responded by filing a motion requesting the court to define the property being taken prior to the taking. A hearing was held and the district court agreed with KDOT and ordered that the definition of the landowners' entire property immediately before the taking exclude the 60' wide county road. The court stated:

"[I]t appears to the Court here that the landowners, at least Mr. Holladay, was encouraging a public dedication of this property for road purposes to be used for what has been regarded as—entitled as a South By-Pass Project. And this encouragement commenced prior to—or at least sometime prior to 1983 in November when the Right of Way was originally given. His subsequent sale of the property to Mr. Burkhart and Mr. Stehlik is—contemplates the reversion, but the testimony of Stehlik and Burkhart is that they were—they desired that this strip be used by the public and that the road be developed and maintained as a public Right of Way. There's nothing in the facts that the Court is aware of that indicates any opposition to the public use of this property from 1983 up to and including the date of the taking.

. . . .

"It appears to the Court that the landowners of Stehlik and Burkhart were silent and sometimes encouraged and advocated the dedication of this property for public purposes in conjunction with this concept of the South By-Pass. Both of them have admitted that the construction of that project would enhance the value of their property, at least this is what their speculation was. I think they anticipated that that would—they would have access to the property, and I think that's amplified in their pleadings here where they identified the property to which they make claim and that description excludes this tract that we're currently concerned with.

"Therefore, based upon that, this course of conduct, including their initial pleadings in this matter, I'm going to find that they are estopped at this time from making of a claim because of the—to that particular 40 feet . . . ."

After the district court concluded that the county road was 60 feet wide, the landowners dismissed all claims brought pursuant to Case 95 C 119.

The trial took place in November 1999. Stehlik was the only witness called by the landowners. KDOT's only witness was Donna Hutcheson, an expert appraiser.

Hutcheson testified that she valued the entire property immediately before the taking and then valued the property remaining immediately after the taking. Hutcheson testified that she relied on the market value method of appraisal to arrive at both values.

## IMPLIED DEDICATION

The landowners argue that the district court erred in finding that their land had been conveyed to the county by implied dedication.

The question of whether a roadway has been acquired by implied dedication is a question of fact. *Meshberg v. Bridgeport City Trust Co.*, 180 Conn. 274, 279, 429 A.2d 865 (1980); *Lindner v. Hill*, 691 S.W.2d 590, 591 (Tex. 1985). When reviewing findings of fact, this court determines whether the findings of the district court are supported by substantial competent evidence. *Sampson v. Sampson*, 267 Kan. 175, 181, 975 P.2d 1211 (1999). See also *Tabor v. Hogan*, 955 S.W.2d 894, 896 (Tex. App. 1997) (affirming trial court's determination that road was public as there was no "overwhelming contradictory evidence").

A public roadway may be established in three different ways: (1) by statute, (2) by prescription, or (3) by dedication. *Kratina v. Board of Commissioners*, 219 Kan. 499, 502, 548 P.2d 1232 (1976). Dedication may either be express or implied. *City of Kechi v. Decker*, 230 Kan. 315, 318, 634 P.2d 1099 (1981). An express dedication is usually accomplished by deed or written instrument. *Braxton v. Guillory*, 721 So.2d 114, 122 (La. App. 1998); *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 837 (Tex. App. 1997). Implied dedication, on the other hand, is a doctrine recognized at

common law and is often referred to as "common-law dedication" or "dedication by estoppel." *Collins v. Taylor*, 518 So.2d 602, 605-06 (La. App. 1987); *Scott v. Cannon*, 959 S.W.2d 712, 718 n.7 (Tex. App. 1998).

A dedication is an offer by the owner to devote property to public use, manifesting an intention that it shall be accepted and used presently or in the future. *Moore v. City of Lawrence*, 232 Kan. 353, 358, 654 P.2d 445 (1982); *City of Kingman v. Wagner*, 168 Kan. 558, 562, 213 P.2d 979 (1950).

The party asserting that a roadway has been dedicated for public use bears the burden of proof and must show: (1) an intent by the property owner to dedicate the land for such use; and (2) acceptance by the public. *City of Kechi*, 230 Kan. at 319; *Cemetery Association v. Meninger*, 14 Kan. 312, 316 (1875). Failure to prove either of the elements is fatal to the party asserting implied dedication. See *Hargrove v. Carlton*, (2001 WL 120732) (Tenn. App. 2001) (road was not dedicated despite its use and acceptance by the public because intent could not be proven); *Tabor v. Hogan*, 955 S.W.2d at 896 (determination of intent is "pivotal" to determination of implied dedication).

We first examine whether the landowners intended to dedicate the 60' tract on the east side of their property.

Intent may be evidenced by the specific acts of the property owner or may be inferred from his acts and declarations. *City of Kingman*, 168 Kan. at 562. Implied dedication requires a clear and unequivocal intention on the part of the landowner to provide the land for public use. *Eastex Wildlife Conservation Ass'n v. Jasper*, 450 S.W.2d 904, 913 (Tex. Civ. App. 1970); see also *Jackson v. Byrn*, 393 S.W.2d 137, 140 (Tenn. 1965) (when determining whether land has been provided to the State by way of implied dedication, intent must be proved by clear and convincing evidence).

The Connecticut Supreme Court discussed the intent requirement in *Mihalczo v. Woodmont*, 175 Conn. 535, 542-43, 400 A.2d 270 (1978), stating:

"Acquiescence of the property owners to its use by some members of the public does not conclusively establish its dedication to the borough for public use. [Ci-

tation omitted.] 'Mere permission on the part of the owner to the public to use the land as a way, without more, will not constitute an intention to dedicate, since a temporary right to use a private way is in the nature of a mere license, revocable at pleasure, and does not in any sense establish the requisite intent. Accordingly, mere permissive use of land as a street or the like, where the user is consistent with the assertion of ownership by the alleged dedicator, does not of itself constitute a dedication nor demonstrate a dedicatory intention.' [Citations omitted.]"

In the present case, the county road has been, according to the testimony of the landowners, "heavily used" by the public. The landowners have never taken any action to protect their property rights and have made no demands that the road be returned to private use.

Furthermore, in filing the inverse condemnation action (Case No. 95 C 119), the landowners described their property as not including the 60' tract west of the section line.

The landowners stood by in silence while the county maintained the county road. While serving on the county commission, Stehlik voted in favor of a resolution obligating the county to maintain and repair the road and signed the resolution as chairman of the board of county commissioners.

In Stehlik's deposition, he refers to the access point that was constructed from the road to his property. If Stehlik believed that the road was his property, he would not have referred to the access point as such. The deposition of Burkhart similarly indicates that Burkhart believed that the access point connected his property with the road, implying that he did not believe the road was his property.

There is substantial competent evidence of a clear and convincing nature to support the district court's determination that the landowners intended the 60' tract to be dedicated to public use.

We next consider whether the 60' tract was accepted by the public.

Mere travel or use by the public is not enough to establish an implied dedication. Some sort of action by the public body indicating acceptance is required. *Kratina*, 219 Kan. at 506. See also *Hargrove*, 2001 WL 17032 (use of a road, even for an extended period of time, will not be sufficient to create an implied dedica-

tion). In *Witty v. Hartland Planning and Zoning Commission*, 2000 WL 765378, the Connecticut Superior Court discussed the steps a party must take in order to prove implied acceptance through use alone. The court stated:

"In order to demonstrate implied acceptance of a thoroughfare solely by means of public use the plaintiffs must demonstrate (1) actual use by the unorganized public; (2) that the use has continued over a significant period of time; (3) that the use is not merely with the consent of the abutting owners, but evidences a 'claimed right of public travel;' and (4) that the use justifies the conclusion that the way is 'of common convenience and necessity.' "

See *A & H Corporation v. Bridgeport*, 180 Conn. 435, 440-41, 430 A.2d 25 (1980).

Maintenance or improvement by a municipality or county can support a finding of implied acceptance of the road. *Kratina*, 219 Kan. at 504; *Meshberg*, 180 Conn. at 282; *Tabor*, 955 S.W.2d at 896. Indeed, governmental entities are not likely to devote public money to private roads. *Kratina*, 219 Kan. at 505.

The passage of Resolution No. 26 of 1990 by the Ford County Commission suggests public acceptance of the dedication of the county road for public use. Moreover, the county used public funds to build an access drive from the landowners' property to the county road to the property.

There is substantial competent evidence to support the district court's finding that the public accepted the dedication. Because both elements of the implied dedication test have been satisfied, we affirm the district court's order defining the dedicated land as the 60' tract just west of the section line on the east side of the landowners' property.

Affirmed.

DAVIS, J., not participating.

CHRISTEL E. MARQUARDT, J., assigned.