

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00427-CV

---

CITY OF BUDA, APPELLANT

V.

N. M. EDIFICIOS, LLC, APPELLEE

---

On Appeal from the 453rd District Court
Hays County, Texas
Trial Court No. 19-2627, Honorable Sherri Tibbe, Presiding

---

July 2, 2024

MEMORANDUM OPINION[1]

QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, the City of Buda (Buda), appeals the trial court's denial of its plea to the jurisdiction seeking dismissal of the regulatory takings claim brought by appellee, N. M. Edificios (Edificios). After considering the six issues Buda presented, we affirm the trial court's order.

---

[1] This appeal was transferred to this court from the Third Court of Appeals. We apply the latter's precedent where it conflicts with ours. See TEX. R. APP. P. 41.3.

***Background***

Buda and Edificios's predecessor-in-interest, Goforth, entered into the Buda Business Park Agreement (BBP Agreement) and the Drainage Easement Agreement in 2007. Through those agreements, the developer was required to grant Buda a drainage easement to help alleviate flooding throughout the city. The city was to "construct, operate, maintain, replace, upgrade, and repair" drainage improvements that convey surface water from the subject property and other nearby properties. Edificios purchased the land in 2012 and submitted an updated plan in 2017, which the parties refer to as the 2017 Plans, to Buda's planning department. Buda responded with instructions to Edificios to provide for additional drainage improvements on the property. Edificios took the position that it was Buda rather than Edificios who was obligated to provide these additional drainage improvements under the BBP and easement agreements. And, in arbitrarily conditioning acceptance and approval of Edificios's development plan upon assuming those duties, the City engaged in either an investment-backed or regulatory taking. The ensuing dispute led to litigation initiated by Edificios in 2019.

We considered the city's earlier filed plea to the jurisdiction in 2021. We affirmed in part, reversed in part, and remanded the cause to the trial court to permit the parties to develop the record on the jurisdictional inquiry related to Edificios's takings claim. *See City of Buda v. N.M. Edificios, LLC (City of Buda I)*, No. 07-20-00284-CV, 2021 Tex. App. LEXIS 2895 (Tex. App.—Amarillo Apr. 16, 2024, pet. denied) (mem. op.). That was done. Edificios amended its petition, this time limiting its claims only to takings causes of action, and Buda again responded with a plea to the jurisdiction.

2

***Preliminary matter***

Edificios contends that we should dismiss Buda's appeal considering that the plea to the jurisdiction and many of the same issues raised on appeal sound in terms similar to those considered in association with *City of Buda I*. While we do note the similarity of concerns, we observe that this court remanded the cause with instructions to further develop the record and respective positions of the parties as it relates to the trial court's jurisdiction over Edificios's claims of regulatory taking. That being so, this appeal was contemplated by and consistent with our opinion in *City of Buda I*. We deny Edificios's request to dismiss the appeal.

***Standard of Review***

We review a trial court's ruling on a plea to the jurisdiction de novo. *City of Austin v. Quinlan*, 669 S.W.3d 813, 818 (Tex. 2023). For a plea that challenges the existence of jurisdictional facts, our standard of review generally mirrors that of a traditional summary judgment: a plaintiff must raise a genuine issue of material fact to overcome the challenge to the trial court's jurisdiction. *Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020); *Abbott v. Doe*, No. 03-22-00126-CV, 2024 Tex. App. LEXIS 2258, at *20–21 (Tex. App.—Austin Mar. 29, 2024, no pet.). In undertaking such review, courts take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Abbott*, 2024 Tex. App. LEXIS 2258, at *21. Courts must also take care not to weigh the merits of the case. *See Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *City of Kyle v. Knight*, No. 03-21-00378-CV, 2023 Tex. App. LEXIS 6752, at *10–11 (Tex. App.—Austin Aug. 30, 2023, no pet.) (mem. op.).

***Issue 1—Ripeness***

Edificios's remaining claim against Buda alleges unconstitutional regulatory taking based on two theories: 1) investment-backed expectations and 2) land-use exaction. Buda maintains that, even after the record was further developed on the issue of jurisdiction, Edificios has failed to allege facts that affirmatively demonstrate that its takings claim is ripe such that the trial court would be vested with subject-matter jurisdiction over the controversy. A case must be ripe in order for the trial court to have subject-matter jurisdiction. *See Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020).

More specifically, Buda maintains that, because there was never a final decision on Edificios's application, Edificios's takings claim must fail. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex. 1998) ("[I]n order for a regulatory takings claim to be ripe, there must be a final decision regarding the application of the regulations to the property at issue."). Buda argues that a final decision typically requires both a rejected development plan and the denial of a variance from the controlling regulations. *See Howard v. City of Kerrville*, 75 S.W.3d 112, 118 (Tex. App.—San Antonio 2002, pet. denied). The matter is not ripe unless the governmental entity charged with implementing the regulation has reached a final decision, Buda emphasizes. *See Maguire Oil Co. v. City of Houston*, 243 S.W.3d 714, 718 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Buda also cites amendments to Edficios's allegations in an attempt to demonstrate that Edificios no longer alleges that there has been a rejection of its application. Our reading of said amendments does not support Buda's conclusion.

4

The Planning and Zoning Commission and the City Council were never asked to consider Edificios's 2017 Preliminary Plan, Buda asserts. Assuming that to be accurate, a fact issue remains necessitating resolution by a factfinder. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004) (stating that where the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the factfinder must resolve the factual dispute). Of record is the affidavit of Edificios's manager. He avers within it that the City "halted the application process of NME's Preliminary Plan entirely" at the "direction of" the City's "legal counsel."

*Mayhew* does speak of a "final decision" "usually" requiring both a rejected development plan and the denial of a variance. *Mayhew*, 964 S.W.2d at 929. Yet, "usually" does not imply a hard and fast rule but, rather, a determination dependent on relevant circumstances. Indeed, futility may be one of those circumstances, that is, requiring a complaint to engage in futile ventures. *See id.* (stating that "futile variance requests or re-applications are not required"); *accord City of Crowley v. Ray*, 558 S.W.3d 335, 344–45 (Tex. App.—Fort Worth 2018, pet. denied) (observing that the futility of complying with administrative procedures has been recognized as an exception to the ripeness doctrine in takings cases). Thus, a "final decision" may take different forms. And, we cannot see why exclusion from the castle should be less definitive because it came from the captain as opposed to the king. It is not farfetched to conclude that directives from the City's legal counsel to those at the gate could be found sufficient to render futile additional attempts by Edificios to gain entry into the realm of the city council.

And, to the extent we have an affiant attesting that such directives were made, there exists a question of fact pretermitting our adoption of the City's position on ripeness.

Buda also contends that the alleged duties which form the basis of Edificios's takings claims "are merely illusory and fabricated through cleverly crafted pleading allegations." In other words, Buda maintains that the language of the agreements cannot reasonably support the conclusion that the land developer was intended to be relieved from the obligation to improve the drainage channel as needed for any non-governmental use. Initially, we note that this court concluded to the contrary in *City of Buda I*. We interpreted the agreements as, at a minimum, raising the issue as to the respective duties and rights in the context of a regulatory taking:

> Edificios's purported reasonable investment-backed expectation consisted of Buda's contractual duty to construct all drainage facilities. It acquired the project from Goforth with that expectation in mind. Buda's effort to shirk that duty and demand that Edificios perform certain drainage improvements unreasonably interferes with the aforementioned expectation.

*City of Buda I*, 2021 Tex. App. LEXIS 2895, at *12–13. That being so, we are disinclined to decide differently when presented with the exact agreements a second time. "Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case; but a determination to revisit an earlier decision is within the discretion of the court under the particular circumstances of each case." *Gotham Ins. Co. v. Warren E & P, Inc.*, 455 S.W.3d 558, 562 n.8 (Tex. 2014). We see no circumstances warranting reconsideration of our decision in *Buda I*.

Further, the issue as presented by Buda sounds more like an attack on the merits of Edificios's cause of action rather than a jurisdictional inquiry. As said previously, consideration of the underlying merits of the claim generally lies outside the scope of

6

review when addressing pleas to the trial court's jurisdiction. Such review will happen, if it happens at all, after the trial court has been presented with a fully developed record and comes to a final substantive judgment on the matter.

We overrule Buda's first issue.

### Issue 2—Striking Declaration of City Clerk

Buda next contends the trial court abused its discretion when it struck the declaration of the City of Buda Clerk Alicia Ramirez.[2] Allegedly, in doing so, the trial court failed in its duty to move beyond the pleadings and consider evidence to resolve the jurisdictional issues raised in the city's plea to the jurisdiction. Edificios responds that the trial court's striking of the declaration was reasonable given the less than forty-eight hours of notice it was afforded by Buda's filing of the reply to which the Ramirez declaration was attached. Edificios also notes that, despite its numerous attempts to seek deposition testimony from such a witness on this very topic, Buda consistently refused to present one. Both of those reasons were proffered in its motion to strike the affidavit.

Given that the trial court did not specify upon what ground it acted, the burden fell to the City to address and negate the legitimacy of each. Yet, it said nothing of its alleged refusal to permit discovery on the substance of the affiant's statement and why the court could not rely on that to support its discretionary ruling. *See Ersek v. Davis & Davis, P.C.*, 69 S.W.3d 268, 270 (Tex. App.—Austin 2002, pet. denied) (noting that a decision to strike an affidavit is reviewed under the standard of abused discretion); *see also In re T.M.*, 33 S.W.3d 341, 348 (Tex. App.—Amarillo 2000, no pet.) (stating that when determining if the trial court abused its discretion, the reviewing court is required to affirm the decision on

---

[2] The affiant purported to explain that the city council had yet to render a final decision on Edificios's development application.

any conceivable ground, even if it was not one mentioned below). So, Buda failed to carry its appellate burden.

Furthermore, even if the trial court erred, the substance of the affidavit would not negate the existence of a material question of fact on the matter of ripeness. So, the purported error would be harmless.

We overrule Buda's second issue.

### Issue 3—Intent, Intentional Act

Next, Buda again attempts to characterize the underlying matter as a simple contract dispute. Therefore, it maintains Buda cannot have "the requisite intent under constitutional-takings jurisprudence" as the matter is simply one in which the city is "withhold[ing] property or money from an entity in a contract dispute." *See MBP Corp. v. Bd. of Trustees of Galveston Wharves*, 297 S.W.3d 483, 489 (Tex. App.—Houston [14th Dist.] 2009, no pet.). As we explained in *City of Buda I*, though the facts involve a contract, the takings claim alleged is to be distinguished from a simple contract dispute. To reiterate,

> Edificios is not suing for breach of contract. Nor is it suing to compel Buda to construct the drainage facilities. Rather, the investor seeks to be relieved of having to perform obligations that Buda had contracted to do under the Agreement. That Buda had so contracted is the expectation allegedly taken from Edificios.

*City of Buda I*, 2021 Tex. App. LEXIS 2895 at *19 n.4. We see no reason that the position Buda re-urges in this appeal should result in a different conclusion at this juncture. We previously addressed this matter and need not reconsider it.

In a related sub-issue, Buda contends that Edificios failed to allege an affirmative act on the part of Buda and such a failure is fatal to its takings claim. Allegedly, a "failure

8

to act is not enough to rise to the level of taking; it is merely an allegation of negligent conduct." Edificios responds by distinguishing the facts of the cases on which Buda relies and noting that the case at bar involves a regulatory taking. That taking consists of preventing Edificios from developing its property unless Edificios makes extensive drainage improvements to benefit the surrounding area. As Edificios observes, this is not necessarily a matter of Buda's failing to do one thing or another; it is Buda's active refusal to allow development that is the basis for Edificios's takings claim.

We agree with Edificios's characterization. It is Buda's alleged refusal to accept Edificios's 2017 Plans for filing without Edificios first acceding to impermissible conditions that effectively prevented Edificios from developing the land. Those are affirmative acts. Additionally, the Texas Supreme Court recognized that a claim for regulatory taking may lie in a municipality's declining permission to a developer to implement its development proposal. *See Mayhew*, 964 S.W.2d at 935–38 (analyzing in terms of regulatory taking a developer's claim about the city's denial of planned development proposal).

We overrule Buda's third issue.

### Issue Four—Challenges to Takings Theories

By its fourth issue, Buda lodges at least four challenges to Edificios's takings claim based on investment-backed expectations. These challenges also fall short.

First, Buda asserts that Edificios has not cited a specific regulation on which it can base an investment-backed expectations takings claim. Without such a regulation, there can be no regulatory taking, per Buda. The Texas Supreme Court has addressed the distinction to be made between physical and regulatory takings:

> Takings can be classified as either physical or regulatory takings. Physical takings occur when the government authorizes an unwarranted physical

9

occupation of an individual's property. *See Yee v. City of Escondido*, 503 U.S. 519, 522, 118 L. Ed. 2d 153, 112 S. Ct. 1522 (1992). The Mayhews do not claim that the Town has physically taken their property. Rather, the Mayhews allege that the denial of their planned development constitutes a regulatory taking.

*Mayhew*, 964 S.W.2d at 933. Furthermore, "[a]n act short of actual physical invasion, appropriation, or occupation can amount to a compensable taking when a governmental agency has ***imposed restrictions*** that constitute an unreasonable interference with the landowner's right to use and enjoy the property." *Taub v. City of Deer Park*, 882 S.W.2d 824, 826 (Tex. 1994) (emphasis added).

Buda also misstates the nature of a regulatory takings claim. Regulatory takings claims may involve decisions by a governmental authority that do not directly implicate a regulation, contrary to Buda's position. Our Supreme Court implicitly recognized as much when saying "a restriction in the permissible uses of property or a diminution in its value, resulting from ***regulatory action*** within the government's police power, may or may not be a compensable taking." *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669-70 (Tex. 2004) (emphasis added). "Regulatory action" insinuates that the nature of the body acting (i.e., a regulatory agency) not just the application of a particular regulation may render the action a compensable taking. Indeed, it seems farcical to suggest that a governmental entity escapes a takings claim when the decision of its regulatory subdivision is utterly arbitrary due to the absence of a "regulation" permitting it to do what it did. The City's argument invites that prospect, and we rebuff the invitation.

And, at the very least, we have an arguable "restriction" in the sense mentioned in *Taub*. It appears in the form of the City's purportedly requiring Edificios to assume various impermissible burdens before its development application can proceed.

10

Second, Buda contends that, because a stormwater permit and no-rise certification were required by municipal code at the time of the agreements, Edificios's expectations that Buda would bear the burden of drainage improvements per the agreements was not reasonable as a matter of law. As Edificios observes, this position appears to be a continuation of the one asserted in *City of Buda I*. There, we observed that while existing ordinances may diminish the reasonableness of an expectation, "the aspects . . . of the Unified Development Code to which Buda alluded do not alone" do so here. *City of Buda I*, 2021 Tex. App. LEXIS 2895, at \*15–16. They do not alone "negate the reasonableness of Edificios's expectation" that the City would construct all drainage facilities under the agreements. *Id.* Having already decided this issue, we need not revisit it. *See Gotham Ins. Co.*, 455 S.W.3d at 562 n.8.

As for Buda's remaining sub-point, it seems to suggest that because the BBP Agreement allegedly ended since the last appeal per its own terms or the application of the law, the underlying controversy and claim evaporated. Yet, the taking of which Edificios complained allegedly occurred much earlier, assuming of course a taking is proven at trial. Moreover, Edificios sued to collect the resulting damages from the injury. *See Edwards Aquifer Auth. v. Bragg*, 421 S.W.3d 118, 151–52 (Tex. App.—San Antonio 2013, pet. denied) (describing the measure of damages applicable to an investment-backed takings claim). Buda does not explain how the previously accrued takings claims with its accrued injury and concomitant damages, if any, vanish due to the supposed expiration of the BBP Agreement. And, we have no obligation to sua sponte contrive argument to fill that void.

We overrule Buda's fourth issue.

11

***Issue Five—Limitations***

Buda next contends Edificios's claims are barred by limitations. Buda's position is premised on the applicability of the two-year statute of limitations governing a claim that a governmental entity damaged real property. *See* TEX. CIV. & PRAC. REM. CODE ANN. § 16.003. Because Edificios filed its petition two years and two months after the last possible action that might be said to be a final decision, limitations purportedly lapsed.

Both Buda and Edificios acknowledge that some uncertainty lingers as to which limitations period applies to a regulatory taking. The Texas Supreme Court has not clearly spoken on the matter, and neither this court nor the sister court from which the cause was transferred appears to have taken a definitive position on the matter. Another sister court addressed the uncertainty on analogous facts and concluded that the ten-year limitations period applied. *See Edwards Aquifer Auth.*, 421 S.W.3d at 134 (and cases cited therein). "[W]here, as here, a regulatory taking results from an unreasonable interference with the landowner's right to use and enjoy the property—such as by restricting access or denying a permit for development—the ten-year statute of limitations applies." *Id.*; *see Tucker v. City of Corpus Christi*, 622 S.W.3d 404, 408 (Tex. App.—Corpus Christi 2020, pet. denied) (discussing distinction between application of two-year and ten-year limitations periods and observing that "[a] takings claim premised on a governmental entity's taking of real property is governed by the ten-year limitations period to acquire land by adverse possession"). Relying on the authority and analysis provided by sister courts, the sounder reasoning favors application of the ten-year statute of limitations to a regulatory takings claim.

We overrule Buda's fifth issue.

12

***Issue Six—Opportunity to Amend***

Buda's sixth issue is one contingent on our having found a pleading or factual deficiency or having concluded that jurisdiction was affirmatively negated. Not having so found, we need not address issues about denying Edificios an opportunity to amend.

We overrule Buda's sixth and final issue.

Having overruled each of Buda's issues, we affirm the trial court's order denying Buda's plea to the jurisdiction.

Brian Quinn
Chief Justice