Marcus C. JOHNSON, on Behalf
of MAII HOLDINGS, INC.,
Appellant,

v.

JACKSON WALKER, L.L.P., Richard F.
Dahlson, Christie S. Tyler, Thomas A.
Montgomery, John J. McDonald, Jr.,
Anthony J. Levecchio, James "Jim"
Silcock, David A. Kallenberger, Gary
B. Hill, and MAII Holdings, Inc., a
Texas Corporation, Appellees.

No. 05–06–00121–CV.

Court of Appeals of Texas,
Dallas.

March 6, 2008.

Emil Lippe, Jr., Law Offices of Lippe & Associates, Dallas, George Whittenburg, Whittenburg, Whittenburg, Garner & Stein, P.C., Amarillo, for Appellant.

Andrew E. Jillson, Hunton & Williams, L.L.P., Scott M. DeWolf, DeWolf McCaffity, LLP, Kenneth E. Carroll, Shelbi Lee Barnhouse, Carrington, Coleman, Sloman & Blumenthal, L.L.P., David Bryant, Diamond, McCarthy, Taylor, Finley, Bryant & Lee, Kenneth W. Biermacher, Kane, Russell, Coleman & Logan, P.C., Dennis N. Ryan, Andrews Kurth, L.L.P., for Appellees.

Before Justices MOSELEY, O'NEILL, and MAZZANT.

### OPINION

Opinion by Justice MOSELEY.

Marcus C. Johnson was a shareholder of MAII Holdings, Inc., a Texas corporation (MAII). He filed suit on behalf of MAII pursuant to article 5.14 of the Texas Business Corporation Act. *See* TEX. BUS. CORP. ACT ANN. art. 5.14 (Vernon 2003).[1] He

---

1. This case arose and was decided under article 5.14, before the Business Organizations Code became effective on September 1, 2006. *See* Act of May 13, 2003, 78th Leg., R.S. ch.

later amended his pleadings to add himself individually as a party plaintiff and to seek the appointment of a receiver over MAII. The trial court denied his motion for a receiver, and later dismissed Johnson's derivative claim.

Johnson filed a notice of appeal in his representative capacity. He challenges: (1) the trial court's denial of the application for receivership; (2) the appointment of the "independent and disinterested" person charged with investigating his derivative proceeding; (3) the good faith determination of that person to dismiss the derivative proceeding; and (4) the constitutionality of article 5.14. For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Briefly, Johnson made the following factual allegations as the basis for his derivative proceeding. He alleged that, in January 2001, after MAII sold a medical appliance business, it had a balance of $29 million in cash and $2 million in liabilities; at that time its stock price was above $4.00 per share. Also in January 2001, two shareholders owning thirty-six percent of the outstanding shares demanded a cash distribution of a minimum of $2.00 per share.

That same month, MAII employed Christie S. Tyler as chief executive officer, and the two entered into a stock purchase agreement and an employment agreement. Under the stock purchase agreement, Tyler bought MAII shares by paying cash and signing a promissory note. Under the employment agreement, Tyler would receive a salary bonus if MAII acquired an operating company. In August 2001, MAII announced that a wholly-owned subsidiary of MAII would buy Car Rental Direct.com (CRD).

In March 2002, MAII announced a positive income projection for 2002 and 2003. Later that year, however, MAII became involved in a dispute with Ford Motor Credit Co., which resulted in a judgment against MAII that (according to Johnson) exceeded the value of MAII's assets. Johnson alleged MAII's stock was valued at $.01 per share in January 2003, and that MAII was insolvent. MAII was delisted from the NASDAQ and failed to make certain SEC filings.

Johnson, a shareholder in MAII, filed the derivative proceeding in 2003. As defendants he named Tyler (MAII's chief executive officer and a member of MAII's board of directors); Jackson Walker, L.L.P. (MAII's law firm); Richard F. Dahlson (a Jackson Walker, L.L.P. attorney and a member of MAII's board of directors); and Thomas A. Montgomery, John J. McDonald, Jr., Anthony J. Levecchio, James "Jim" Silcock, David A. Kallenberger, and Gary B. Hill (then-current or former members of MAII's board of directors). He also named MAII as a nominal defendant.

Johnson alleged, among other things, that the board created a subsidiary for the CRD acquisition in order to sidestep a shareholder vote, and that the law firm and some directors realized ";personal benefits" as a result of the CRD purchase. Johnson also alleged Tyler failed to pay on the promissory note related to his stock purchase agreement.

MAII filed a motion to stay the derivative proceeding pursuant to article 5.14(D), and a motion to appoint an independent and disinterested person to conduct an

182, §§ 1, 17, secs. 21.551–.563, 2003 Tex. Gen. Laws 267, 448–50, 597 (current version at TEX. BUS. ORG. CODE ANN. §§ 21.551–.563 (Vernon 2007)). Therefore, we conclude the Business Organizations Code does not apply to this case.

inquiry pursuant to article 5.14(H)(3). MAII moved the court to appoint Ernest E. Figari, Jr., stating he was "an independent and disinterested investigator." MAII attached an engagement letter and resume for Figari and also filed Figari's affidavit in support of its motion to appoint. Johnson opposed the motions, arguing that: such appointment was a waste of money and not in the shareholders' best interest; Figari was "not truly independent" and an inquiry into referrals between Figari's law firm and Jackson Walker L.L.P. was needed; and article 5.14(H)(3) violated article 1, section 19 of the Texas Constitution (the due course of law provision) and constituted an unconstitutional delegation of judicial authority to a non-judicial officer.

The day before the court heard MAII's motions, Johnson filed a Plaintiff's First Amended Original Petition Containing Application for Appointment of a Receiver, adding himself individually as a plaintiff and seeking the appointment of a receiver for MAII. He alleged he was a shareholder and had an interest in the following specific corporate assets: (1) the causes of action against the directors Dahlson, Tyler, Montgomery, McDonald, Levecchio, Silcock, Kallenberger, and Hill as set out in the derivative action; (2) the cause of action against Tyler for failing to pay on the promissory note related to the stock-purchase agreement; and (3) the causes of action against Jackson Walker, L.L.P. and Dahlson as attorneys as set out in the derivative action. Johnson alleged MAII did not have enough assets to satisfy the Ford Credit judgment without pursuing the claims in question. Johnson suggested William "Bill" M. Boyd be appointed as receiver to preserve these specific assets and bring about a corporate rehabilitation. Johnson requested a hearing on his appli-

cation for appointment of a receiver, to which MAII objected.

The trial court heard and granted MAII's motions to stay and to appoint Figari. Later, the trial court denied Johnson's application for appointment of a receiver and his motion for hearing.

Figari began his investigation and requested three extensions of time, which the trial court granted. On February 8, 2005, Ford Credit filed a petition for involuntary bankruptcy, which the bankruptcy court dismissed on August 6, 2005. Also, Johnson removed this suit to the federal court on April 6, 2005, which remanded it on June 3, 2005.

Figari gave his report to MAII on June 1, 2005. In the report, Figari determined that continuation of Johnson's suit was not in MAII's best interest. On June 6, 2005, MAII moved to dismiss the derivative proceeding pursuant to article 5.14(F). Although MAII resisted, Johnson obtained a copy of Figari's report. Johnson also deposed Figari pursuant to an agreed order, and Figari produced appendices to his report, certain correspondence, and his bills.[2] Johnson filed a response to the motion to dismiss, raising additional constitutional challenges to article 5.14. The trial court heard MAII's motion to dismiss; Figari was examined at the hearing. The trial court granted MAII's motion to dismiss and entered a judgment dismissing all claims with prejudice. The trial court made findings of fact and conclusions of law. This appeal followed.

## II. RECEIVERSHIP ISSUES

In his first issue, Johnson challenges the trial court's rulings on his request for a receivership. His issue asks whether article 5.14(H) trumps the receivership provisions of articles 7.04 and 7.05 of the busi-

---

**2.** We note that the bills are not part of the record on appeal.

ness corporation act such that the trial court could ignore a properly drawn petition for a receivership, refuse discovery and a hearing, and summarily dismiss the petition. Under his second issue, he argues the trial court should have conducted a hearing on his application for receivership. Under his fourth issue, Johnson argues Figari made substantive decisions regarding the receivership allegations but without constitutional safeguards.

A court "may appoint a receiver for a corporation on the petition of one or more stockholders of the corporation." TEX. CIV. PRAC. & REM.CODE ANN. § 64.002(b) (Vernon Supp. 2007). However, it "may not appoint a receiver for a corporation, partnership, or individual on the petition of the same corporation, partnership, or individual." *Id.* § 64.002(a). *See also Floore v. Morgan,* 175 S.W. 737, 738, 740 (Tex.Civ. App.-Fort Worth 1915, no writ) ("The suit by the directors of the company was necessarily a suit in behalf of the company, and if the company itself is prohibited from suing for the appointment of a receiver, the same inhibition applies to the directors of the company acting in its behalf."). At oral argument, we questioned whether Johnson, acting in his representative capacity, has standing to complain with respect to the trial court's disposition of the receivership claim. The parties filed supplemental briefs on this issue.

█ In his Plaintiff's First Amended Original Petition Containing Application for Appointment of a Receiver, Johnson sought relief in two capacities: derivatively "on Behalf of MAII HOLDINGS, INC." and "Individually as a Shareholder, seeking Appointment of a Receiver." However, the only notice of appeal filed herein states: "Marcus M. Johnson, on Behalf of MAII Holdings, Inc., Plaintiff, hereby file this his notice of appeal...." Johnson suing (or appealing) on behalf of MAII is, in law, not the same person as Johnson suing (or appealing) on behalf of MAII. *See Elizondo v. Tex. Natural Res. Conservation Comm'n,* 974 S.W.2d 928, 931 (Tex.App.-Austin 1998, no pet.). *See also Pace v. Jordan,* 999 S.W.2d 615, 622 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) ("A shareholder's derivative cause of action is based on a corporate cause of action.").

Further, rule of appellate procedure 25.1(c) provides, in pertinent part:

**Who must file notice.** A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal.... The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.

TEX.R.APP. P. 25.1(c). Because Johnson did not perfect appeal in his individual capacity as a shareholder, the only appellant before this Court is Johnson acting in his representative capacity for MAII. *See id.; Elizondo,* 974 S.W.2d at 931. Any complaints Johnson may have had in his individual capacity with respect to the trial court's disposition of the receivership claim are not before us.

Further, because the court may not appoint a receiver for a corporation based on the corporation's own request, the trial court did not err in denying the request for a receiver over MAII made by a shareholder seeking to act on MAII's behalf. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 64.002(a); *Floore,* 175 S.W. at 738. Thus, we reject Johnson's first, second, and fourth issues regarding the trial court's failure to appoint a receiver.

## III. DERIVATIVE PROCEEDING ISSUES

Johnson's second and third issues challenge Figari's appointment and the trial

court's dismissal of the derivative proceeding.

## A. Applicable Law

As noted earlier, this derivative proceeding is governed by article 5.14. Under that statute, generally a shareholder may not commence a derivative proceeding on behalf of a corporation until ninety days after a written demand is filed with the corporation setting forth with particularity the subject of the claim or challenge and requesting that the corporation take suitable action. TEX. BUS. CORP. ACT ANN. art. 5.14(A), (B), (C) (Vernon 2003). If the corporation commences an inquiry into the allegations made in a demand or petition and the person or group described in article 5.14(H) is conducting an active review of the allegations in good faith, the court shall stay a derivative proceeding until the review is completed and a determination is made by the person or group as to what further action, if any, should be taken. *Id.* art. 5.14(D)(1). The stay may be renewed. *Id.*

Article 5.14(F) provides for the dismissal of derivative proceedings:

*A court shall dismiss a derivative proceeding on a motion by the corporation if the person or group described in Section H of this Article determines in good faith, after conducting a reasonable inquiry and based on the factors as the person or group deems appropriate under the circumstances, that the continuation of the derivative proceeding is not in the best interests of the corporation.* In determining whether the requirements of the previous sentence have been met, the burden of proof shall be on:

(1) the plaintiff shareholder, if a majority of the board of directors consists of independent and disinterested directors at the time the determination is made or if the determination is made by a panel of one or more independent and disinterested persons appointed under Section H(3) of this Article; or

(2) the corporation, in all other circumstances; provided that if the corporation presents prima facie evidence that demonstrates that the directors appointed pursuant to Section H(2) of this Article are independent and disinterested, the burden of proof is on the plaintiff shareholder.

*Id.* art. 5.14(F) (emphasis added). Good faith means "[a] state of mind consisting in (1) honesty of belief or purpose, (2) faithfulness to one's duty or obligation, ... or (4) absence of intent to defraud or to seek unconscionable advantage." BLACK'S LAW DICTIONARY 701 (7th ed. 1999).

Pertinent to this case, the determination described in article 5.14(F) must be made by:

a panel of one or more independent and disinterested persons appointed by the court on a motion by the corporation setting forth the names of the persons to be so appointed together with a statement that to the best of its knowledge the persons so proposed are disinterested persons and qualified to make the determinations contemplated by Section F of this Article. *Such panel shall be appointed if the court finds that such persons are independent and disinterested persons and are otherwise qualified in regard to expertise, experience, independent judgment, and other factors deemed appropriate by the court under the circumstances to make such determinations.* Persons appointed by the court shall have no liability to the corporation or its shareholders for any action or omission taken by them in that capacity, absent fraud or wilful misconduct.

Tex. Bus. Corp. Act Ann. art. 5.14(H)(3) (emphasis added).

If a corporation proposes to dismiss a derivative proceeding pursuant to article 5.14(F), discovery by a shareholder following the filing of the derivative proceeding in accordance with the provisions of article 5.14 is limited to facts relating to whether the person or group described in article 5.14(H) is "independent and disinterested, the good faith of the inquiry and review by such person or group, and the reasonableness of the procedures followed by such person or group in conducting its review and will not extend to any facts of substantive matters with respect to the act, omission, or other matter that is the subject matter of the action in the derivative proceeding." *Id.* art. 5.14(D)(2). "The scope of discovery may be expanded if the court determines after notice and hearing that a good faith review of the allegations for purposes of [article 5.14(F) ] has not been made by an independent and disinterested person or group in accordance with [article 5.14(F) ]." *Id.*

## B. Standard of Review

■ Findings of fact in a case tried to the court have the "same force and dignity as a jury's verdict" upon jury questions. *Ashcraft v. Lookadoo,* 952 S.W.2d 907, 910 (Tex.App.-Dallas 1997, writ denied) (en banc). They are not conclusive when a complete reporter's record appears in the record. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex.App.-Houston [14th Dist.] ), *writ ref'd n.r.e.,* 699 S.W.2d 199 (Tex.1985) (per curiam). We review a trial court's fact findings for legal and factual sufficiency of the evidence. *Tripp Vill. Joint Venture v. MBank Lincoln Ctr., N.A.,* 774 S.W.2d 746, 751 (Tex. App.-Dallas 1989, writ denied). We review the conclusions drawn from the facts to determine their correctness. *Ashcraft,* 952 S.W.2d at 910.

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). In making this determination, we must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id.*

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Francis,* 46 S.W.3d at 241. We set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.; Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

## C. Discussion

### 1. Discovery Matters

■ As a preliminary matter, we first address Johnson's complaints that he was denied discovery relating to Figari's disinterested status. Specifically, he contends that Figari admitted at the hearing on the motion to dismiss that his firm received a referral from Jackson, Walker, L.L.P. and that, although this called into question Figari's "neutrality," he was denied discovery on this issue.

The trial court made specific findings regarding discovery: an agreed order limited Johnson's discovery to the areas of inquiry set forth in article 5.14; Johnson deposed Figari in connection with article 5.14 discovery; the report and appendices were produced; and Figari was examined by Johnson's counsel and defendants' counsel at the hearing on the motion to dismiss. Our review of the record reveals evidence supporting these findings.[3]

■ Johnson also argues he should have been allowed discovery related to the Directors and Officers insurance policy, which he alleged was the source of Figari's fees and was thus related to his disinterested status. However, a person is not rendered disinterested merely by receiving "ordinary and reasonable compensation for services rendered." TEX. BUS. CORP. ACT ANN. art. 1.02(A)(12)(e) (Vernon Supp. 2007). Johnson makes no argument that Figari's compensation was not ordinary and reasonable. Further, Johnson does not identify information pertinent to this issue that was either not allowed by the trial court or not provided by Figari or MAII.

■ Finally, Johnson relies on the last sentence of article 5.14(D)(2), quoted above, regarding the expansion of discovery. This provision is not applicable here as the trial court did not determine that a good faith effort had not been made.

Thus, we reject Johnson's complaints concerning discovery. We now turn to the merits of Johnson's complaints relating to Figari's appointment and the motion to dismiss based on his report.

### 2. Motion to Appoint

In Finding of Fact 3, the trial court found Figari "to be disinterested, independent, and otherwise qualified in regard to expertise, experience, and independent judgment to make the determinations required [for dismissal]." The trial court concluded that Johnson had the burden to prove Figari was not independent and disinterested; after conducting discovery and "thoroughly examining" Figari he failed to meet that burden; and Figari was independent and disinterested. In his second issue, Johnson contends the trial court erred in appointing Figari as the "independent and disinterested" person to be appointed pursuant to article 5.14(H)(3).

The business corporation act defines a "disinterested" person, or an "associate" of the person, as one who "is not a party to the ... transaction or is not materially involved in the conduct that is subject to the claim or challenge and does not otherwise have a material financial interest in the outcome of the ... transaction or the disposition of the claim or challenge." TEX. BUS. CORP. ACT ANN. art. 1.02(A)(12). As pertinent to this appeal, a person is not considered to be "materially involved" or to otherwise have a "material financial interest in the outcome" solely by reason of the existence of one or more of the following circumstances:

(a) the person was nominated or elected as a director by persons who are interested in the contract or transaction or who are alleged to have engaged in

---

**3.** Specifically, there is evidence that Johnson deposed Figari on September 1, 2005, and asked him if he or any members of his firm had a referral from Jackson, Walker, L.L.P. Figari responded that he did not believe so, but that he had made no specific inquiry. By letter dated September 20, 2005, Figari informed Johnson that he had inquired about such referrals and had information about one referral (made since the deposition) and another nonreferral contact. Subsequently, MAII offered to reconvene Figari's deposition, which did not occur. Figari was questioned at the hearing on the motion to dismiss. Johnson specifically asked Figari about the contact mentioned in the letter.

the conduct that is subject to the claim or challenge; ...

(d) the corporation or its subsidiaries has an interest in the contract or transaction or was affected by the alleged conduct; [or]

(e) the person or an associate or affiliate of the person receives ordinary and reasonable compensation for services rendered to review, make recommendations, or decide on the disposition of the claim or challenge; ....

*Id.* art. 1.02(A)(12)(a), (d), (e).

The business corporation act defines an "independent" person as one who: (a) is disinterested; (b) is not an associate or member of the immediate family of a party to the transaction that is the subject of the claim or challenge or that is alleged to have engaged in conduct that is subject to the claim or challenge; (c) does not himself, nor does an associate or member of his immediate family, have a business, financial, or familial relationship with a party to the transaction that is the subject of the claim or challenge, which, in each case, could reasonably be expected to materially and adversely affect the person's judgment with respect to the consideration of the disposition of the matter subject to the claim or challenge in the interests of the corporation; and (d) is not otherwise shown, by a preponderance of the evidence by the person challenging the independence of the person, to be under the controlling influence of a party to the transaction that is the subject of the claim or challenge or that is alleged to have engaged in conduct that is subject to the claim or challenge. *Id.* art. 1.02(A)(15)(a)-(d) (Vernon Supp. 2007). As pertinent to this appeal, a person is not considered to have a relationship that could be expected to materially and adversely affect the person's judgment solely by the existence of the same circumstances as under article 1.02(A)(12)(a), (d), and (e), and the following circumstance: "the person or an associate (other than the corporation and its associates), immediate family[ ] member or affiliate of the person has an ongoing business relationship with the corporation that is not material to that person, associate, family member, or affiliate." *Id.* art. 1.02(A)(15)(f).

■ Figari's letter, attached to the motion to appoint, and his affidavit stated that neither he nor any member of his law firm had represented any of the named parties to Johnson's suit; had any direct or indirect interest in MAII or "the underlying transactions in the Suit;" or had any business, financial, or familial relationship with any of the named parties. In his affidavit, he stated he had prior experience serving as counsel to a special litigation committee and was familiar with the usual duties pursuant to article 5.14. Further, he stated that he was "generally familiar" with Jackson Walker, L.L.P.; it was located on another floor in the same building as his firm; and he had "no business relationship with Jackson Walker, L.L.P. apart from being involved, from time-to-time, in litigation in which it is involved in representing a party to such litigation." Applying the appropriate standards of review, we conclude the evidence is legally and factually sufficient to support the trial court's Finding of Fact 3. *See City of Keller,* 168 S.W.3d at 827; *Francis,* 46 S.W.3d at 241; *Pool,* 715 S.W.2d at 635. We resolve Johnson's second issue against him.

### 3. Motion to Dismiss

■ Finding of Fact 4 states that Figari interviewed certain individuals during his investigation and reviewed documents provided by the parties. Finding of Fact 5 states, "After conducting a reasonable inquiry based on the factors he deemed ap-

propriate under the circumstances, Mr. Figari determined that continuation of the derivative proceeding was not in the best interests of MAII." Finding of Fact 12 states:

> The Court finds that Mr. Figari conducted a reasonable inquiry into [Johnson]'s allegations. The Court further finds that Mr. Figari determined in good faith that the continuation of the derivative proceeding was not in the best interest of MAII.

The trial court concluded Figari's inquiry was reasonable and that his determination as to continuation of the derivative proceeding was in good faith. However, in his third issue, Johnson contends Figari did not make his determination to dismiss the litigation in good faith.

Appendix B to Figari's report lists the documents Figari reviewed in preparing the report. Appendix C to the report lists the persons interviewed, including named parties and their counsel and other interested persons. It also states Figari had "unrestricted access to [MAII]'s files, records and witnesses."

Nevertheless, Johnson argues Figari failed to investigate fully certain matters and takes issue with certain of the conclusions in Figari's report, arguing Figari drew the wrong conclusions from the information and that these failures are evidence of bad faith. Specifically, Johnson argues Figari failed to consider certain evidence pertaining to Tyler's background and finances. However, the report shows that Figari investigated these specific matters. Johnson contends he had specific information material to Tyler's finances, which Figari would have discovered if Figari had interviewed Johnson and his counsel. However, the record shows Figari did interview Johnson's counsel, with Johnson present, and that Figari requested Johnson supply "[a]ny documents … that Mar-

cus Johnson or his counsel believes may be relevant to or supportive of any of the matters involved in the suit." The report states that though counsel "initially said the requested information would be provided, ultimately [he] failed to provide it." We cannot agree with Johnson that Figari's failure to use his information shows bad faith or an unreasonable inquiry. And to the extent Johnson disagrees with the conclusions and recommendations in Figari's report, these arguments relate to "substantive matters" not the "good faith of the inquiry and review" and "the reasonableness of the procedures followed" by Figari. *See* Tex. Bus. Corp. Act Ann. art. 5.14(D)(2). Thus, they are irrelevant to the trial court's decision on the motion to dismiss.

Johnson also argues Figari's lack of good faith is evidenced by Figari's failure to interview Johnson. Again, however, the record shows that Figari interviewed Johnson's counsel, with Johnson observing; there was correspondence by Figari asking to interview Johnson; one of the letters predated the filing of the bankruptcy petition; Johnson felt he could not be interviewed because of a "stay" of bankruptcy; Figari disputed whether there was such a "stay" in this case; and the documents requested by Figari were not provided. Thus, the parties dispute Johnson's availability for an interview. This evidence does not show a lack of honesty of belief or purpose by Figari, unfaithfulness to his duty under article 5.14, or an intent to defraud or seek unconscionable advantage. *See* Black's Law Dictionary 701 (7th ed. 1999).

Applying the appropriate standard of review, we conclude the evidence is legally and factually sufficient to support Findings of Fact 4, 5, and 12 regarding the good faith and reasonable inquiry as to the determination to dismiss. *See City of Keller,*

168 S.W.3d at 827; *Francis,* 46 S.W.3d at 241; *Pool,* 715 S.W.2d at 635; *Cain,* 709 S.W.2d at 176. *See also* TEX. BUS. CORP. ACT ANN. art. 5.14(H)(3). These findings in turn support the trial court's conclusion that Figari's inquiry was reasonable and that his determination as to continuation of the derivative proceeding was in good faith. *See* TEX. BUS. CORP. ACT ANN. art. 5.14(F). We resolve Johnson's third issue against him.

## IV. CONSTITUTIONALITY

In his fourth issue, Johnson contends article 5.14 violates various provisions of the United States and Texas Constitutions "as written or as applied."

### A. Standard of Review

 When reviewing the constitutionality of a statute, we begin with a presumption that it is constitutional. *Walker v. Gutierrez,* 111 S.W.3d 56, 66 (Tex.2003); *see* TEX. GOV'T CODE ANN. § 311.021(1) (Vernon 2005). The wisdom or expediency of the law is the legislature's prerogative, not ours. *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 520 (Tex.1995).

 The party challenging a statute's constitutionality has the burden of proving that the statute fails to meet constitutional requirements. *Walker,* 111 S.W.3d at 66. In challenging the constitutionality of a statute, a party may show that the statute is unconstitutional on its face or as applied to that party. *Garcia,* 893 S.W.2d at 518 n. 16. To sustain a facial challenge, the party must show that the statute, by its terms, always operates unconstitutionally. *Id.* at 518. To sustain an "as applied" challenge, the party must show that the statute is unconstitutional when applied to that particular person or set of facts. *Id.* at 518 n. 16.

### B. Improper Delegation of Judicial Power

Johnson contends article 5.14 constitutes an unconstitutional delegation of judicial power by the legislature to a nonjudicial officer—the "special litigation committee"—without appropriate safeguards or opportunity for judicial review.

 Article II, section 1 of the Texas Constitution provides that the Texas government shall consist of three distinct departments, legislative, executive, and judicial, "and no person or collection of persons, being one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." TEX. CONST. art. II, § 1. The separation of powers clause may be violated in two ways: (1) one branch of government assumes or is delegated a power that is more properly attached to another branch, or (2) one branch unduly interferes with another branch to the extent that the other branch cannot effectively exercise its constitutional powers. *State v. Williams,* 938 S.W.2d 456, 458 (Tex.Crim.App.1997). The judicial power encompasses the authority to hear evidence, resolve issues of fact, decide questions of law, and enter judgments in accordance with the facts and the law. *Tabor v. Hogan,* 955 S.W.2d 894, 897 (Tex. App.-Amarillo 1997, no pet.).

 Johnson argues that, under the statute, a board can nominate a "friendly person" to conduct an investigation that is without procedural safeguards. He asserts that "all discretion and judgment of the trial court was supplanted by the actions of the wrongdoers in charge of the corporation's affairs." He contends that the decision to dismiss can be made only by a court "based upon applicable rules of law, upon motion, notice, evidence, sub-

stantive examination by the court, and meaningful hearing."

We disagree with the premise of Johnson's argument. The trial court has discretion in analyzing the independence of the person conducting the inquiry and the good faith of such inquiry. Under article 5.14(D)(1), a stay cannot be granted without the trial court's approval, which it makes after determining the corporation "is conducting an active review of the [shareholder's] allegations *in good faith* . . . ." *See* Tex. Bus. Corp. Act Ann. art. 5.14(D)(1). As applicable here, under article 5.14(H)(3) the trial court decides whether the nominated person is independent and disinterested. Then, under article 5.14(F), the trial court also decides whether to grant the corporation's motion to dismiss based on the trial court's review of the good faith of the determination to dismiss and of the reasonableness of the inquiry. *See id.* art. 5.14(F), (H)(3). Commensurate with his burden of proof, the shareholder is permitted discovery on the independence, disinterestedness, good faith, and reasonable inquiry issues. Accordingly, the statute provides that there will be no stay or dismissal without a trial court's review and approval, with the burden of proof on the shareholder to negate the statutory factors, and with reasonable discovery available to the shareholder concerning the issue.

■■■■■ A shareholder's derivative cause of action is based on a corporate cause of action. *Pace,* 999 S.W.2d at 622. A corporation's directors—not its shareholders—have the right to control the litigation of corporate causes of action. *Id.* (citing Tex. Bus. Corp. Act Ann. arts. 2.02(A)(2) (Vernon Supp. 2007), 2.31 (Vernon 2003)). The business judgment rule reserves this decision, like the decisions on other internal management issues, to the corporation's directors. *See Pace,* 999

S.W.2d at 623 (citing *Cates v. Sparkman,* 73 Tex. 619, 11 S.W. 846, 849 (1889) and *Langston v. Eagle Publ'g Co.,* 719 S.W.2d 612, 616 (Tex.App.-Waco 1986, writ ref'd n.r.e.)).

Johnson's argument is an indirect attack on the application of the business judgment rule in the context of a derivative proceeding. As explained in *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1000 (N.Y.1979), a corporation's directors' business decisions are not measured by "objective" standards, and are thus not appropriate for the courts. Johnson argues that the statute is defective because it does not specify "uniform standards or procedures" to be followed in every investigation. But determining the best interest of the corporation is an inquiry unique to each allegation, and article 5.14 permits the widest possible inquiry, limited only by the independence, disinterestedness, good faith, and reasonableness factors. As stated in *Auerbach,* which dealt with a similar statute governing shareholder derivative suits:

> Proof, however, that the investigation has been so restricted in scope, so shallow in execution, or otherwise so *pro forma* or halfhearted as to constitute a pretext or sham, consistent with the principles underlying the application of the business judgment doctrine, would raise questions of good faith or conceivably fraud which would never be shielded by that doctrine.

*Id.* at 1003. Article 5.14 permits proof on these issues and review by the trial court. Accordingly, we reject Johnson's argument that article 5.14 improperly delegates judicial powers to a non-judicial officer.

## C. Due Course of Law/Due Process

■■■■■ Johnson also asserts article 5.14 violates the due course of law guaran-

tee in the Texas Constitution, which provides:

> No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

TEX. CONST. art. I, § 19; *see Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex.1983) (both article I, sections 13 and 19 are "due process" guarantees); *see also* TEX. CONST. art. I, § 13. The United States Constitution provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; . . . .

U.S. CONST. amend. XIV, § 1. "Due course" and "due process" are without meaningful distinction. *See Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 929 (Tex.1995). In reviewing a due course claim, we must determine: (1) whether the plaintiff had a liberty or property interest entitled to due process; and, if so (2) what process is due. *Id.*

██ There is no liberty issue here, and we cannot agree that Johnson, as a shareholder suing on behalf of MAII, has a property interest in the derivative proceeding. Any recovery in a shareholder derivative action belongs to the corporation, not the shareholders. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Christian v. ICG Telecom Can., Inc.*, 996 S.W.2d 270, 274 (Tex. App.-Houston [1st Dist.] 1999, no pet.). In derivative actions, shareholders have no compensable property right at stake. *Lewis v. Anderson*, 615 F.2d 778, 784 (9th Cir.1979). Accordingly, Johnson's due course of law/due process challenge fails.

## D. Equal Protection

██ Johnson also asserts article 5.14 violates the Texas Constitution's guarantee of equal protection, stated as follows:

> All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.

TEX. CONST. art. I, § 3. Section 1 of the Fourteenth Amendment of the United States Constitution provides, in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; . . .; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV. Under these provisions, all persons similarly situated should be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest, unless the statute discriminates against a suspect class. *See id.; Garcia*, 893 S.W.2d at 524.

██ Article 5.14 is rationally related to the purpose of balancing the rights of shareholders in holding "faithless directors and managers" accountable against the abuse of "strike suits." *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548–49, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Further, the provisions of article 5.14 apply to all shareholder derivative actions brought on behalf of Texas corporations, and all shareholder derivative plaintiffs are treated similarly. Accordingly, we conclude Johnson's equal protection challenge fails.

### E. Open Courts and Right to a Jury Trial

 The Texas Constitution provides:

All courts shall be open, and every person for an injury done him, in his lands, goods, person, or reputation, shall have remedy by due course of law.

TEX. CONST. art. I, § 13. To establish a right to redress under the open courts provision, a litigant must show: (1) he has a cognizable common-law cause of action, and (2) restriction of the claim is unreasonable or arbitrary when balanced against the statute's purpose. *Diaz v. Westphal,* 941 S.W.2d 96, 100 (Tex.1997).

The Texas Constitution also provides that "[t]he right of trial by jury shall remain inviolate." TEX. CONST. art. I, § 15. The right exists when "the action involves rights and remedies of the sort typically enforced in an action at law." *State v. Credit Bureau of Laredo, Inc.,* 530 S.W.2d 288, 292 (Tex.1975) (quoting *Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974)).

However, a derivative proceeding is "historically an equitable matter." *Ross,* 396 U.S. at 538, 90 S.Ct. 733; *see Cohen,* 337 U.S. at 548, 69 S.Ct. 1221; *Lewis,* 615 F.2d at 784; *Cates,* 73 Tex. at 621, 11 S.W. at 848–49; *Mussina v. Goldthwaite,* 34 Tex. 125, 129 (1870) ("An individual stockholder may maintain a suit in equity against the directors of a corporation for misconduct in office."). Accordingly, Johnson's open courts and right to a jury trial challenges fail.

### F. Additional Constitutional Challenges

 Johnson also argues article 5.14 violates the Seventh Amendment (trial by jury) and the Fifth Amendment (taking without just compensation) of the United States Constitution. Because he cites no authority and makes no substantive arguments directed to these challenges, he has waived appellate review of them. *See* TEX. R.APP. P. 38.1(h).

### G. Disposition of Constitutional Challenges

Having rejected Johnson's arguments challenging the constitutionality of article 5.14, we conclude article 5.14 is not unconstitutional either on its face or as applied here. *See Garcia,* 893 S.W.2d at 518 & n. 16. We resolve Johnson's fourth issue against him.

### V. CONCLUSION

Having decided Johnson's issues and arguments against him as set forth above, we affirm the trial court's final judgment.