NO. 07-09-0328-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

DECEMBER 18, 2009
______________________________

ROBERT RAWLINSON, JR.,
Â 
Appellant

v.

THE STATE OF TEXAS, 
Â 
Appellee

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â _________________________________

FROM THE 242nd DISTRICT COURT OF HALE COUNTY;

NO. B16043-0505; HON. EDWARD LEE SELF, PRESIDING
_______________________________

ON ABATEMENT AND REMAND
_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
Â Â Â Â Â Â Â Â Â Â Appellant appeals from his motion to revoke community supervision. Neither the
clerkâs record nor the reporterâs record have been filed. An extension motion was filed by
the clerk on December 17, 2009, representing that appellant has not paid or made
arrangements to pay for the clerkâs record.
Â Â Â Â Â Â Â Â Â Â Accordingly, we abate this appeal and remand the cause to the 242nd District Court
of Hale County (trial court) for further proceedings. Upon remand, the trial court shall
immediately cause notice of a hearing to be given and, thereafter, conduct a hearing to
determine the following:
Â Â Â Â Â Â Â Â Â Â 1. whether appellant desires to prosecute the appeal; 
 2. whether appellant is indigent; and, 
3. whether the appellant is entitled to a free appellate record due to his
indigency. 

Â Â Â Â Â Â Â Â Â Â The trial court shall cause the hearing to be transcribed. So too shall it 1) execute
findings of fact and conclusions of law addressing the foregoing issues, 2) cause to be
developed a supplemental clerkâs record containing its findings of fact and conclusions of
law and all orders it may issue as a result of its hearing in this matter, and 3) cause to be
developed a reporterâs record transcribing the evidence and arguments presented at the
aforementioned hearing, if any. Additionally, the district court shall then file the
supplemental records and reporterâs records transcribing the hearing with the clerk of this
court on or before January , 2010. Should further time be needed by the trial court to
perform these tasks, then same must be requested before January , 2010.
Â Â Â Â Â Â Â Â Â Â It is so ordered.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Per Curiam
Do not publish.



ey urge that pursuant
to TRCP 193.6 the trial court was required to exclude the witnesses unless, based on the
record, the trial court found (1) good cause for the failure to timely respond or (2) the
failure to timely respond did not unfairly surprise or prejudice the other parties. W.S. and
I.S. cite Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 914 (Tex. 1992), and Northwestern
Nat'l County Mut. Ins. Co. v. Rodriguez, 18 S.W.3d 718, 722 (Tex.App.-San Antonio 2000,
pet. denied), for the propositions that the rules are designed to prevent trial by ambush
and to that end, the proper remedy is exclusion of the witness.

 Rulings admitting or excluding evidence are committed to the trial court's sound
discretion. See Texas Dept. of Transp. v. Able, 35 S.W.3d 608, 617 (Tex. 2000). A trial
court abuses its discretion when it rules without regard for any guiding rules or principles.
See City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1998). When tendered
evidence should be considered for only one purpose, it is the opponent's burden to secure
a limiting instruction. See TRE 105(a); Larson v. Cactus Utility Co., 730 S.W.2d 640, 642
(Tex. 1987). If evidence is admitted without limitation, it can be considered for all
purposes. See TRE 105(a); Birchfield v. Texarkana Mem. Hosp., 747 S.W.2d 361, 365
(Tex. 1987). An appellate court must uphold the trial court's evidentiary ruling if there is
any legitimate basis for the ruling. See Owens-Corning Fiberglass Corp. v. Malone, 972
S.W.2d 35, 43 (Tex. 1998); In re T.M., 33 S.W.3d 341, 348 (Tex.App.-Amarillo 2000, no
pet.). 

 The record shows that the TRCP 194 Request for Disclosure on which W.S. and
I.S. based their objection to the TDPRS witnesses was served only on behalf of I.S. At
the time the request was served, W.S. had not made an appearance in the lawsuit and the
document specified that I.S. was making the discovery request. The trial court did not
abuse its discretion in denying the objection of W.S. to testimony of the TDPRS witnesses
when the witnesses had not been disclosed in response to a TRCP 194 request made only
by I.S. 

 I.S. also objected to testimony of the TDPRS witnesses because they had not been
disclosed in response to the TRCP 194 request served by her. I.S. did not, however,
request an instruction limiting admission of such testimony to the case against W.S. 
Because the testimony was admissible against W.S., I.S. was required to request such a
limiting instruction in order to preserve error. See TRE 105(a); Larson, 730 S.W.2d at 642. 
Her failure to request a limiting instruction waived her right to complain that the evidence
was admitted for all purposes. See TRE 105(a); Birchfield, 747 S.W.2d at 365. 
Accordingly, we must uphold the ruling as to I.S., as well as to W.S. See Malone, 972
S.W.2d at 43; In re T.M., 33 S.W.3d at 348. The first issue is overruled. 

ISSUE 2: HEARSAY STATEMENTS 

BY THE CHILD, K.S. 

 Via issue two, W.S. asserts that the trial court erred in allowing proof of statements
by K.S. which were hearsay and which did not meet the requirements of Family Code §
104.006. He complains of testimony repeating three specific out-of-court statements by
K.S. 

 The first statement complained of was a report by K.S. to a nurse practitioner
working in the Texas Tech Care Center. A Care Center nurse practitioner, Gene Bell,
performed physical examinations of K.S. in connection with allegations that K.S. had been
sexually abused. Bell described physical findings from the examinations of K.S. and
opined that the physical findings were indicative of both vaginal and anal penetration of
the child. The TDPRS attorney asked Bell what statements K.S. made to Bell about "how
this may have happened." W.S.'s attorney objected on the basis that statements by K.S.
were hearsay, were not the child's first outcry, and that Family Code Â§ 104.006 had to be
read in conjunction with Criminal Code Â§ 38.072, (2) which would limit outcry statements to
the first outcry. The trial court considered Family Code Â§ 104.006 and overruled the
objection. Bell then testified that K.S. told Bell that "They ripped my clothes off and put
their fingers in my pee-pee, and put a stick in my pee-pee with dirt on it." The statement
by K.S. did not attribute her assault to any particular person. The statement was
consistent with other evidence and testimony that K.S. was sexually assaulted by
neighborhood boys in the manner she related. W.S. does not present authority or
argument as to how admission of the statement, even if it was erroneously admitted,
harmed him.

 The second statement complained of was a narration by K.S. to Dr. Frances Klegg-Ferris. Klegg-Ferris was a counselor at the Panhandle Assessment Center at the time she
dealt with K.S. The Assessment Center is a facility for the medical and psychological
examination and assessment of abused children. When Klegg-Ferris was asked about
statements made by K.S., W.S. requested a hearing outside the presence of the jury for
the purpose of determining admissibility of Klegg-Ferris's testimony under TRE 702. The
trial court granted the request and excused the jury. Following voir dire examination of
Klegg-Ferris, W.S. objected to her testimony as unreliable under TRE 702. The trial court
overruled the objection. Subsequently, Klegg-Ferris was asked whether K.S. made
statements about "things that happened to her, abuse that happened to her." W.S.
objected on the basis that such statements would be hearsay, but did not request a
hearing outside the presence of the jury. The TDPRS attorney asserted that the
statements were admissible under Family Code Â§ 104.006, and the trial court overruled 
 the objection. Klegg-Ferris then testified that K.S. related that she had seen her mother
and daddy engaging in sex in the bedroom, she had been shown a video of her mother
engaging in sex with a man other than her daddy, K.S. had been forced to have sex with
a man, K.S. watched herself having sex with the man on video and K.S.'s daddy had put
his hands between her legs and "used his fingers." 

 On appeal W.S. asserts that the statements by K.S. were hearsay, the trial court did
not conduct a hearing outside the presence of the jury, and that the statements should be
held inadmissible. He cites Family Code Â§ 104.006 and In the Matter of G.M.P., 909
S.W.2d 198 (Tex.App.-Houston [14th Dist.] 1995, no writ) for his assertion that if a hearing
outside the presence of the jury does not occur, the hearsay statements of K.S. are not
admissible. Again, he does not offer authorities or argument as to how admission of the
statement, even if error, resulted in entry of an improper judgment when considered in light
of the entire record.

 The third hearsay statement complained of occurred during testimony by witness
Susan Fox. Fox identified herself as a psychotherapist engaged in private practice as a
counselor. K.S. was referred to Fox by the Panhandle Assessment Center. Fox was
asked what K.S. disclosed to her regarding abuse of K.S. by her father, W.S. Pursuant
to a hearsay objection by W.S. and his request that the matter be taken up outside the
presence of the jury, the trial court excused the jury, heard the testimony and argument of
counsel and overruled the objection. Fox then testified, in part, that K.S. told Fox that
W.S. had touched her in her private parts and told her to go into a bedroom, whereupon
she screamed and her dog, Spot, (3) bit W.S. on the finger. Nevertheless, K.S. reported that
she went into the bedroom where W.S. put his hand on her chest area and laid on top of
her with his pants on. Fox related that K.S. stated that she told her mother of the incident
and her mother told W.S. that if he repeated the conduct he would go to jail. W.S. does
not offer authorities or argument as to how admission of the statement, even if error,
harmed him by resulting in entry of an improper judgment. 

 The TDPRS responds, in part, by asserting that the statements were admissible
under Family Code Â§ 104.006; the trial court did not abuse its discretion in admitting the
evidence; and the evidence was cumulative of other evidence to the same effect. Among
other references to the record, the TDPRS refers to testimony by Dr. Peggy Skinner and
Dr. Beth Shapiro, both of whom interviewed and counseled with K.S. 

 Evidentiary rulings admitting or excluding evidence are committed to the trial court's
sound discretion. See Able, 35 S.W.3d at 617; Alvarado, 897 S.W.2d at 753. A trial court
abuses its discretion when it rules without regard for any guiding rules or principles. Id. at
754. A case will not be reversed because of an erroneous evidentiary ruling unless the
error was harmful, that is, unless it probably caused the rendition of an improper judgment. 
See TRAP 44.1(a); Able, 35 S.W.3d at 617; Malone, 972 S.W.2d at 43; Gee v. Liberty
Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989). A successful challenge to an
evidentiary ruling usually requires the complaining party to show that the judgment turns
on the particular evidence excluded or admitted. See Able, 35 S.W.3d at 617; Alvarado,
897 S.W.2d at 753. 

 In addition to the hearsay evidence to which W.S. objected and about which 
complaint is made in his second issue, the record reflects admission of evidence, without
objection, of statements made by K.S. referring to sexual activities by W.S. and "acting out"
by K.S. of sexual abuse by W.S. For example, Dr. Skinner testified that K.S. played with
dolls in such a manner to indicate that adult males sexually contacted small females, and
K.S. stated that fathers and brothers taught sexual activities to children. Dr. Shapiro, a
licensed marriage and family therapist, testified that she was aware that K.S. had made
allegations against her father in terms of his sexually penetrating her. 

 Some of the evidence of which W.S. complains could have had a significant effect
on the jury. But, W.S. does not offer authority or argument as to how admission of the
evidence probably resulted in the rendition of an improper judgment when considered in
context with other parts of the record, or how such evidence is not cumulative of other
evidence that W.S. could have or did sexually abuse K.S. W.S. has not demonstrated that
the judgment turns on the particular evidence admitted over his objection. See Able, 35
S.W.3d at 617; Alvarado, 897 S.W.2d at 753. Thus, even if the evidence of which he
complains was admitted in error, because W.S. has failed to show that the evidence
probably resulted in the rendition of an improper judgment when considered in light of the
entire record, we must, and do, overrule the issue. See TRAP 44.1(a); Able, 35 S.W.3d
at 617; Malone, 972 S.W.2d at 43. 

ISSUE 3: RES JUDICATA AND 

COLLATERAL ESTOPPEL

 By issue three, W.S. and I.S. urge that certain evidence and testimony should have
been excluded from trial based on the doctrines of res judicata and collateral estoppel. 
The doctrines were asserted based on a separate suit affecting the parent-child
relationship involving I.S. and two of her children by a prior marriage. The separate suit
was in the 315th District Court of Harris County ("the Harris County suit"). In the Harris
County suit, TDPRS allegedly was attempting to terminate the parent-child relationships
between I.S. and two of her children other than K.S. A nonjury hearing was held in the
Harris County suit on November 18, 1999. During the hearing, TDPRS waived any claim
other than a claim for conservatorship of the children. Neither K.S. nor W.S. were named
in the Harris County suit. At the time of the hearing in the Harris County suit, the matter
now on appeal was pending in Garza County ("the Garza County suit"). K.S. and W.S.
were parties to the Garza County suit. K.S. was represented in Garza County by a court-appointed attorney who was acting as guardian ad litem pursuant to Family Code Â§
107.001 and attorney ad litem pursuant to Family Code Â§ 107.012. 



A. Res judicata 

 W.S. and I.S. reference Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex.
1996), for the requirements of res judicata: (1) a prior final judgment on the merits by a
court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3)
a second action based on the same claims as were or could have been raised in the first
action. They claim that all the elements of res judicata were fulfilled in the Harris County
suit so as to bar litigation in the Garza County suit of matters based on allegations of
sexual abuse of K.S. by W.S. I.S. and W.S. claim that such allegations were the primary
focus of the Garza County suit and, therefore, both certain evidence and the entire Garza
County suit should have been foreclosed. We disagree. 

 Res judicata is an affirmative defense under TRCP 94 and should be treated as a
plea in bar which reaches the merits of the case. See Walker v. Sharpe, 807 S.W.2d 442,
446 (Tex.App.--Corpus Christi 1991, no writ). The doctrine, in essence, bars a subsequent
suit if the matters asserted in the subsequent suit arise out of the same subject matter as
a previous suit and which matters, through the exercise of reasonable diligence, could
have been litigated in the prior suit. See Barr v. Resolution Trust Corp. ex rel. Sunbelt
Federal Sav., 837 S.W.2d 627, 631 (Tex. 1992). Texas adheres to the "transactional"
approach to res judicata. What comprises a "transaction" for purposes of res judicata is
to be decided pragmatically, giving weight to such considerations as whether the facts are
related in time, space, origin, or motivation, whether they form a convenient trial unit, and
whether their treatment as a trial unit conforms to the parties' expectations or business
understanding or usage. See id. 

 The Garza County suit involved two parties not named in the Harris County suit:
K.S. and W.S. The issues in Garza County focused on whether it was in the best interest
of K.S. to have the parent-child relationship terminated between K.S. and either her
mother, her father or both. Even assuming, arguendo, that there was some evidence in
the Garza County case to support a finding that the best interest of K.S. as to termination
of the parent-child relationship with I.S. or W.S. was foreclosed by the Harris County suit
via the doctrine of res judicata, the matter was not established as a matter of law. The
record contains evidence to support the trial court's decision to admit the evidence
objected to. Thus, the trial court did not abuse its discretion in admitting the evidence. 
See Brumbalow v. State, 933 S.W.2d 298, 300 (Tex.App.-Waco 1996, pet. ref'd). 
Moreover, the jury verdict did not require entry of judgment in favor of I.S. and W.S. on the
basis of res judicata as an affirmative defense. See TRCP 301 (judgment of the court shall
conform to the pleadings, the nature of the case proved and the verdict). Neither I.S. nor
W.S. requested submission of a jury question on the defense and the defense was waived. 
See TRCP 279. The trial court did not err in failing to enter judgment in favor of I.S. or
W.S. on their res judicata defense. 

B. Collateral estoppel 

 W.S. and I.S. reference Bonniwell v. Beech Aircraft Corp., 663 S.W.2d 816 (Tex.
1984), as the basis for their collateral estoppel claim. They cite Bonniwell for the elements
of the doctrine of collateral estoppel being: (1) the facts sought to be litigated in the second
action were fully and fairly litigated in a prior action; (2) the facts were essential to the
judgment in the first action; and (3) the parties who litigated the issue in the first action
were cast as adversaries in the first action. Id. at 818. They assert that the doctrine bars
relitigation of any ultimate issue of fact that was actually litigated and essential to the
judgment in a prior suit, and thus bars relitigation in the Garza County suit of two matters:
(1) the factual questions of physical and sexual abuse of the children by W.S. and (2) the
best interest of K.S. W.S. and I.S. conclude that the Harris County court necessarily found
that allegations W.S. physically and sexually abused the children were not true in order
to find that it was in the best interest of I.S.'s two children involved in the Harris County suit
for I.S. to be their managing conservator. W.S. and I.S. further conclude that such finding
collaterally estops TDPRS from litigating such matters in the Garza County suit. 

 The doctrine of collateral estoppel, or issue preclusion, applies when the party
against whom the doctrine is asserted had a full and fair opportunity to litigate the issue
in a prior suit. See Tarter v. Metropolitan Sav. & Loan Ass'n, 744 S.W.2d 926, 927 (Tex.
1988). Whether the doctrine applies involves equitable considerations of fairness not
necessarily encompassed by the "full and fair opportunity" inquiry. See Sysco Food
Services, Inc. v. Trapnell, 890 S.W.2d 796, 804 (Tex. 1994). 

 Some evidence in the Harris County suit duplicated that which is the subject of the
complaints of W.S. and I.S. in this appeal. The issues of whether it was in the best interest
of K.S. to have the parent-child relationship between K.S. and each of her parents
terminated, however, were not fully and fairly litigated in the Harris County suit. For
example, the jury charge in the Garza County case instructed the jury, in connection with
each question as to termination of the parent-child relationship, that it must have been
proven that termination of the parent-child relationship was in the best interest of K.S. The
charge instructed the jury, in part, that some of the factors the jury could consider in
determining the best interest of K.S. were the desires of the child; the emotional and
physical needs of the child, presently and in the future; and the future plans of W.S., I.S.
or the agency seeking custody. 

 As we more fully discuss in connection with issues 9, 10, 11 and 12, the Texas
Supreme Court has specified that the controlling question in cases involving termination
of the parent-child relationship is whether the parent-child relationship between a parent
and the child should be terminated. See Texas Dept. of Human Services v. E.B., 802
S.W.2d 647, 649 (Tex. 1990). Such an ultimate question involves considerations of both
specific statutory grounds and the best interest of the individual child in question. See id.
at 648-49. As the jury charge demonstrates, the best interest of K.S. was at issue in Garza
County, with considerations as to her best interest focused on her individual situation. See
Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). The record of the Harris County
hearing does not mandate a conclusion that such issue was fully and fairly litigated in that
hearing. The trial court did not abuse its discretion in determining that it would be
equitable for the jury in the Garza County case, considering the best interest of K.S., to
consider evidence that W.S. may have physically and sexually abused the children. 

 As we have previously noted, evidentiary rulings admitting or excluding evidence
are committed to the trial court's sound discretion. See Able, 35 S.W.3d at 617. When
the standard of review is abuse of discretion, the record must simply contain some
evidence to support the decision made by the trial court. See Brumbalow, 933 S.W.2d 298
at 300. 

 Some evidence supports the trial court's decision that the evidence admitted was 
relevant to the question of the best interest of K.S. Thus, the trial court did not abuse its
discretion in denying motions to exclude the evidence. We overrule issue three. 
 ISSUE 4: EVIDENCE THAT W.S.

WAS UNDER INDICTMENT 

 Issue four alleges that the trial court erred in failing to grant a mistrial when TDPRS
offered evidence in the presence of the jury that W.S. had been indicted for aggravated
sexual assault although he had not been finally convicted of such crime. The issue is
based on the following question begun by the TDPRS attorney which was interrupted by
an objection from counsel for W.S.: "Now, Mr. [W.S.], you are currently under indictment
for the offense -." W.S.'s counsel interrupted the question by objecting that evidence of
an indictment without a conviction was improper, and requested a mistrial. The trial court
sustained the objection, instructed the jury not to consider the indictment for any reason
and denied the motion for mistrial.

 The overruling of a motion for mistrial should not be disturbed absent an abuse of
discretion. See Kipp v. State, 876 S.W.2d 330, 339 (Tex.Crim.App. 1994). In the absence
of proof to the contrary, it will be presumed that the jury followed the court's instruction to
disregard evidence. See Colburn v. State, 966 S.W.2d 511, 520 (Tex.Crim.App. 1998).

 W.S. does not reference the record of six volumes of testimony and one volume of
exhibits in his assertion of harm from the question that was interrupted by his counsel's
objection. He merely concludes that the question, as begun, probably caused the jury to
base their decision on emotion rather than on the facts before them, and that the judgment
should be reversed. 

 Error may be waived by inadequate briefing. See, e.g., Fredonia State Bank v.
Gen. Am. Life Ins. Co., 881 S.W.2d 279, 284 (Tex. 1994); Trenholm v. Ratcliff, 646
S.W.2d 927, 934 (Tex. 1983); Gulf Coast State Bank v. Emenhiser, 562 S.W.2d 449,
452-53 (Tex. 1978). And, an appellate court is not required to make an independent,
unguided search of the record for evidence supporting a party's position or to determine
the validity of an issue. See TRAP 38.1(h); Fredonia State Bank, 881 S.W.2d at 283;
Saldana v. Garcia, 285 S.W.2d 197, 201 (Tex. 1955). 

 W.S. has not proved by his brief, argument, and references to authorities and the
record, that the jury did not follow the trial court's instruction to disregard that part of the
question voiced by the TDPRS attorney, and that such part of the question probably
resulted in entry of an improper judgment. We overrule issue four. 

ISSUES 5, 6, 7 and 8: ALLOWING TERMINATION 

ON BASIS OF VIOLATION OF PRIOR COURT ORDER

 Issues 5, 6, 7 and 8 assert error in the court's charge authorizing the jury to find that 
parental rights of W.S. and I.S. could be terminated if the jury found that they violated
previous court orders which had been entered under Chapters 261 and 262 of the Texas
Family Code, and also found termination in the best interest of K.S. The four issues are
briefed together and rely, as stated in appellants' brief, on the same facts and legal
authorities. The issues assert that proceedings to terminate parental rights on the basis
of violated court orders are, in effect, criminal contempt actions whereby the parent is
being punished for conduct allegedly committed in the past. Referencing Texas
Government Code Â§ 21.002 (4) in regard to criminal contempt proceedings, W.S. and I.S.
urge that "punishment" of terminating the parent-child relationship is the civil equivalent
of a death penalty and the proceedings, therefore, should be required to conform as
closely as practicable to those in criminal cases. They assert that the criminally-equivalent
termination proceedings require consideration of whether: (issue 5) violation of a court
order can support termination of parental rights without violating the parent's rights under
the United States and Texas Constitutions to due process, due course of law and equal
protection as well as the right to be free from cruel and unusual punishment; (issue 6) the
trial court exceeded its authority by imposing termination of the parent-child relationship
for criminal contempt of its court order; (issue 7) the trial court exceeded its authority by
imposing termination of the parent-child relationship for criminal contempt based on an
evidentiary standard of "clear and convincing" evidence rather than "proof beyond a
reasonable doubt"; and (issue 8) terminating parental rights for violation of a court order
constitutes constitutionally-prohibited cruel and unusual punishment because punishment
for criminal contempt violation of a court order is limited to six months in jail and a $500
fine by Government Code Â§ 21.002. W.S. and I.S. reference M.L.B. v. S.L.J., 519 U.S.
102, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996), and Wiley v. Spratlan, 543 S.W.2d 349 (Tex.
1986), as authority for the assertion that termination is the civil equivalent of a criminal
death penalty.

 Extinguishment of the parent-child relationship by judicial action is a "unique kind
of deprivation," see Lassiter v. Dep't of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153,
2160, 68 L.Ed.2d 640 (1981), of "an interest far more precious than any property right." 
See Santosky v. Kramer, 455 U.S. 745, 759, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982). 
The United States Supreme Court has described termination of parental rights as state
action, "few forms [of which] are so severe and irreversible." Id. at 759, 102 S.Ct. at 1398. 
Nevertheless, the Court has not classified proceedings to terminate the parent-child
relationship as criminal proceedings. See Lassiter, 452 U.S. at 27 n.3, 101 S.Ct. at 2160
n.3 ("Some parents will have an additional interest to protect [above the decision whether
to terminate parental status]. Petitions to terminate parental rights are not uncommonly
based on alleged criminal activity. Parents so accused may need legal counsel to guide
them in understanding the problems such petitions may create"); Santosky, 455 U.S. at
764, 102 S.Ct. at 1400 ("Unlike criminal defendants, natural parents have no "double
jeopardy" defense against repeated state termination efforts"). Moreover, the federal
constitution's due process requirement mandates that criminal guilt be proved beyond a
reasonable doubt, see id. at 755, 102 S.Ct. at 1396, while the United States Supreme
Court has specifically held that termination of the parent-child relationship, which
proceedings are also subject to due process standards, may be based on proof meeting
the lesser standard of clear and convincing evidence. See id. at 769-70, 102 S.Ct. at
1403. 

 Violation of a court order might subject a parent to criminal contempt proceedings, 
but does not necessarily do so. In the case before us, neither W.S. nor I.S. was charged
with criminal contempt. Although termination of their parent-child relationships with K.S.
are significant losses to them, neither Texas family law statute nor the United States
Supreme Court has denominated the termination proceeding as criminal, or the termination
of the parent-child relationship as "punishment" for a crime. See Santosky, 455 U.S. at
765, 102 S.Ct. at 1400; Lassiter, 452 U.S. at 27 n.3, 101 S.Ct. at 2160 n.3; Family Code
Â§ 161.001. Nor do we. 

 Objections by W.S. and I.S. in the trial court and their appellate issues have been
based on characterization of the termination proceedings as criminal contempt
proceedings. We disagree with such characterization and overrule issues 5, 6, 7 and 8. 


ISSUES 9, 10, 11 and 12: BROAD FORM

JURY QUESTIONS 

 W.S. states that issues nine, ten, eleven and twelve rely on the same facts and
legal authority, and thus he addresses the issues together in his brief. We will likewise
address the issues together.

 The trial court submitted the case to the jury on broad form questions. See TRCP
277. Question one asking whether the parental rights of W.S. (5) should be terminated was
worded as follows: 

 Should the parent-child relationship between W.S. and the child, K.S. be
terminated? 

 Answer "Yes" or "No"_________________. 


 The jury answered "Yes." The jury was instructed not to answer any further
questions if the answer to question one was "Yes." Accordingly, the jury did not answer
any other questions. The verdict was signed by ten jurors. 

 The jury instructions required a "Yes" answer to be based on two findings: (1)
termination was in the best interest of the child, and (2) one or more of four specified
events had occurred. The instruction and question relating to the "best interest" of the
child are not at issue. (6) The instruction relating to specific findings required by Family
Code Â§ 161.001(1) is the subject of W.S.'s complaint. 

 In connection with jury question one, the jury was instructed: 

 

 For the parent-child relationship of [W.S.], to be terminated as to the child,
K.S., it must be proven by clear and convincing evidence that at least one
of the following events has occurred: 

 

 1. the parent has knowingly allowed the child to remain in
conditions or surroundings which endanger the physical or
emotional well-being of the child; 


 2. the parent has engaged in conduct or knowingly placed
the child with persons who engaged in conduct which
endangers the physical or emotional well-being of the child;


 3. the parent contumaciously refused to submit to a
reasonable and lawful order of a court under Subchapter D,
Chapter 261, Texas Family Code; and/or,


 4. the parent failed to comply with the provisions of a court
order that specifically established the actions necessary for
the parent to obtain the return of the child who has been in the
permanent or temporary managing conservatorship of the
Department of Protective and Regulatory Services for not less
than nine months as a result of the child's removal from the
parent under Chapter 262 for the abuse or neglect of the child.


 W.S.'s attorney objected to the submission because the question and instructions
did not require the same ten (7) or more jurors to find that violation of the same one of the
events listed had occurred. W.S. urged in his objections to the charge that the disjunctive
language of the instruction would allow three of the jurors to find that one of the listed
events occurred, three others to find that a second listed event occurred, three others to
find that a third listed event occurred, and another three to find that the fourth listed event 
occurred, and yet to answer "Yes" to the termination question. W.S. does not contend that
any of the four statutory grounds included in the instructions by the trial court lack
evidentiary support, and we have overruled his complaints that allowing termination on the
basis of violating a court order is improper. Thus, we deem his reliance on Crown Life Ins.
Co. v. Casteel, 22 S.W.3d 378, 388 (Tex. 2000) (when, in the face of a timely and specific
objection, a trial court submits a single broad form liability question incorporating multiple
theories of liability, some valid and some invalid, the submission is harmful error when the
appellate court cannot determine whether the jury based its verdict on an improperly
submitted invalid theory) to be misplaced. 

 W.S. further urges that the manner of submission violates his right to have specific
findings as to the provisions of Family Code Â§ 161.001(1) which are alleged as bases for
termination. He urges that implementation of the statutory provisions via broad form jury
question and the instructions as given violate his rights to due process and equal
protection under the Fourteenth Amendment to the United States Constitution and to due
course of law and equal protection under Article 1 Â§Â§ 3 and 10 of the Texas Constitution. 
 

 TDPRS responds that W.S.'s contentions have been foreclosed by the decision of
the Texas Supreme Court in E.B. We agree with TDPRS.

 In E.B., the trial court submitted the cause to the jury in the following broad form 
format: "Should the parent-child relationship between [the parent] and the child E.B. be
terminated?" The jury was instructed to answer "Yes" or "No." The jury answered "Yes." 
In connection with the question, the jury was given the following instruction:

 For the parent-child relationship in this case to be terminated, it must be
proven by clear and convincing evidence that at least one of the following
events has occurred:


 (1) the parent has knowingly placed or knowingly allowed the
child to remain in conditions or surroundings which endanger
the physical or emotional well-being of the child; or


 (2) the parent has engaged in conduct or knowingly placed the
child with persons who engaged in conduct which endangers
the physical or emotional well-being of the child. 


See E.B. v. Texas Department of Human Services, 766 S.W.2d 387, 388 (Tex.App.-Austin
1989), reversed by, 802 S.W.2d 647. 

 The Austin Court of Appeals reversed the judgment terminating the parental rights
of E.B.'s mother. The Court of Appeals reasoned that the submission violated the right of
E.B.'s mother to have at least ten jurors determine that she violated one specific
termination ground before her parental rights could be terminated. The Texas Supreme
Court, however, held that the trial court did not abuse its discretion in the formulation of
the jury charge. The Supreme Court specified that the controlling question was whether
the parent-child relationship between a parent and a child should be terminated, not what
specific grounds the jury relied on in answering the termination questions affirmatively. 
See E.B., 802 S.W.2d at 649. In reaching its decision, the Texas Supreme Court
addressed contentions by the mother that her due process rights were violated by the
submission. The Court summarily disagreed: "Recognizing [appellant's] rights does not
change the form of submission." Id. 

 The trial court in this matter tracked the language of Family Code Â§ 161.001(1) in
the four grounds given the jury as possible bases for termination of W.S.'s parental rights. 
Two of the grounds involved endangering the physical or emotional well-being of the child. 
Two of the grounds involved refusal to submit to or comply with a court order. To the
extent that two of the grounds did not involve specific statutory language involving
endangering the welfare of the child, the jury charge before us differs from that considered
by the Texas Supreme Court in E.B. However, we do not consider such difference to
remove this case from the guidance of the Supreme Court's language in E.B. that the
controlling question is whether the parent-child relationship should be terminated, not what
specific grounds the jury relied on in answering the termination question. 

 In some instances broad form submissions are not feasible. The Texas Supreme
Court has determined, however, that the manner of submission before us is a "feasible"
submission. See E.B., 802 S.W.2d at 649. This court's decision in In the Interest of S.H.,
548 S.W.2d 804 (Tex.Civ.App.-Amarillo 1977, no writ), which is cited by W.S., pre-dates
the changes to TRCP 277 which mandate broad form submissions whenever feasible. 
S.H. was decided when TRCP 277 did not contain its current language, and before the
decision in E.B. S.H. does not control our decision under the current language of TRCP
277 and E.B. We are bound to follow E.B. unless the Texas Supreme Court overrules or
vitiates it. See Rios v. Texas Commerce Bancshares, Inc., 930 S.W.2d 809, 816
(Tex.App.--Corpus Christi 1996, writ denied); Penick v. Christensen, 912 S.W.2d 276, 286
(Tex.App.--Houston [14th Dist.] 1995, writ denied). Accordingly, we overrule issues nine,
ten, eleven and twelve. 

CONCLUSION

 Having overruled the twelve issues presented by W.S. and I.S., we affirm the
judgment of the trial court.

 Phil Johnson

 Justice







Publish. 
1. References to the Family Code hereafter will be by reference to "Family Code Â§_." 
References to provisions of the Texas Rules of Appellate Procedure or the Texas Rules
of Civil Procedure, respectively, will be by reference to "TRAP_" or "TRCP_." Reference
to provisions of the Texas Rules of Evidence will be by reference to "TRE_." Reference
to the Texas Penal Code will be by reference to "Penal Code Â§ ___."
2. Reference to the Texas Code of Criminal Procedure will be by reference to
"Criminal Code ______."
3. W.S. testified during the hearing outside the presence of the jury that the family
never had a dog named Spot. The parties stipulated that I.S. would testify to the same
effect. 
4. Tex. Gov't Code Ann. Â§ 21.002 (Vernon Supp. 2002). Further references to the
Government Code will be by referencing "Government Code Â§ _." 
5. The questions and instructions for I.S. and W.S. were the same, except for their
names.
6. Another instruction was: "Best Interest" it must also be proven by clear and
convincing evidence that termination of the parent-child relationship would be in the best
interest of the child. Some of the factors, but not all of the factors you may consider in
determining the best interest of the child are: [nine factors listed]."
7. The jury was also instructed, in accordance with TRCP 226a.III, that 


 You may render your verdict upon the vote of ten or more members
of the jury. The same ten or more of you must agree upon all of the
answers made and to the entire verdict . . . .